**In re Tracy Renee WOODS, Debtor.**

**No. 97–29843WHB.**

United States Bankruptcy Court,
W.D. Tennessee.

Dec. 14, 2000.

Irving S. Zeitlin, Memphis, TN, for debtor.

Tracey P. Malone, Bartlett, TN, for Ford Motor Credit Company.

George W. Stephenson, Memphis, TN, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER ON DEBTOR'S MOTION TO USE INSURANCE PROCEEDS

WILLIAM HOUSTON BROWN,
Bankruptcy Judge.

In this Chapter 13 case, the debtor filed a motion to be permitted to use insurance proceeds paid on the destruction of her automobile to purchase another vehicle, and Ford Motor Credit Company ("Ford") objected. A hearing was held on November 8, 2000, and the Court took this contested matter under advisement. There is no dispute of facts, and the issue is one of law.

### ISSUE

The issue presented is whether the Chapter 13 debtor, after paying in full the secured portion of Ford's bifurcated claim, may obtain an order requiring Ford to release its lien on the vehicle title, notwithstanding that the unsecured portion of Ford's claim has not been paid and that the debtor has not received a discharge.

### DISCUSSION

As stated, the facts are not in dispute. The debtor's proposed plan, filed

on July 9, 1997, provided: "A Properly Secured Creditor will retain its lien on the collateral until the secured portion of its claim plus interest is paid. Once the secured portion is paid the Creditor will no longer have a lien even though an amount is still owed on the unsecured portion of its claim." Had this language carried over into the confirmed plan, Ford's objection would have no merit, because Ford would have been bound by the terms of the confirmed plan. 11 U.S.C. § 1327(a). However, that language does not appear in the plan accompanying the confirmation order. Rather, docket entry 8, the confirmation order and plan, provides as to Ford: "retain lien 11 U.S.C. 1325(a)(5)(B)(i)," which Code language states, "with respect to each allowed secured claim provided for by the plan—the plan provides that the holder of such claim retain the lien securing such claim. . . ." The confirmed plan goes on to specify that Ford has a secured claim of $7,650.00 to be paid with 15% interest at $185.00 per month and that Ford has an unsecured claim of $983.91. There is no reference in the confirmation order to release of Ford's lien upon payment of the secured portion of its claim. As the sole person responsible for proposing a plan, 11 U.S.C. § 1321, the debtor has the responsibility of seeing that any specific proposed language is included in the confirmed plan. Just as the creditor is bound, so is the debtor bound by the confirmed plan. 11 U.S.C. § 1327(a).

Ford's remaining unsecured claim is $983.81, and Ford acknowledges that it will receive less than that amount if the debtor completes all scheduled plan payments, since the distribution to unsecured creditors is fixed at 60% by a July 24, 1998 order. The debtor's insurance carrier has tendered $2,895.00 in loss proceeds to the debtor, and, of course, the debtor wants to use all of these proceeds to purchase another vehicle.

This case is distinguished factually from *In re Harvey,* 213 F.3d 318 (7th Cir.2000), where that court held GMAC responsible for not clearing up ambiguity between a long-form plan and a short-form plan prior to confirmation. Proof was offered in *Harvey* that the creditor had received the debtor's long-form plan, which contained the type of lien-release language at issue in Ms. Woods' proposed plan. No such proof was offered here, and, as stated above, the confirmed plan, which is attached to the confirmation order, contains no hint of the debtor's proposed language.

In light of the absence of pre-discharge, lien-release language in the confirmed plan, the issue is focused upon whether the fact that payment in full, with interest, of Ford's bifurcated, secured claim requires Ford to release its lien on the vehicle title prior to the debtor's completion of all plan payments (secured and unsecured) and receipt of discharge under § 1328. On this issue there is a split of reported authority, and neither the Bankruptcy Appellate Panel nor the Court of Appeals for the Sixth Circuit have addressed it.

Some courts, perhaps the majority, have held that the phrase "retain the lien" in § 1325(a)(5)(B)(i) merely means retention until the secured portion of a bifurcated claim is paid in full. *See, e.g., In re Hernandez,* 175 B.R. 962 (N.D.Ill.1994) (which ultimately held that the lien in issue was released when the discharge occurred). Other courts have looked to the plan language, and if that language specified that the lien would be released upon payment of the secured claim, such would be required prior to discharge. *See, e.g., In re Nicewonger,* 192 B.R. 886 (Bankr. N.D.Ohio 1996). Absent such mandatory language in the confirmed plan, many courts have refused to require lien release, even after payment of the secured portion, until the debtor completed all plan payments and received a discharge. *See, e.g., In re Thompson,* 224 B.R. 360 (Bankr. N.D.Tex.1998). Some courts have refused to confirm a plan that proposes to require lien release prior to discharge. *See, e.g., In re Scheierl,* 176 B.R. 498 (Bankr. D.Minn.1995).

■ Because of recent authority in this Circuit on a related issue, this Court is persuaded to adopt the view that, absent mandatory release language in the confirmed plan,[1] the Chapter 13 debtor may not obtain an order over the lien creditor's objection that would require the lien creditor to release its lien prior to the debtor's Chapter 13 discharge. If there is no objection to a properly noticed motion, or if there is consent, the court may grant a Chapter 13 debtor's motion for release of the lien on a vehicle title prior to discharge.

The principal reason for the Court's decision is the effect of dismissal of the case. In Chapter 13, the debtor may voluntarily dismiss her case at any time, if the case had not been previously converted, and that right may not be waived. 11 U.S.C. § 1307(b). Thus, notwithstanding this debtor's present stated intention of remaining in Chapter 13, circumstances may change that would alter her present intention. The effects of dismissal of a Chapter 13 case include the reinstatement of avoided liens and the revesting of property of the estate as it was held prior to the original Chapter 13 case filing. 11 U.S.C. § 349(b). If Ford is required to release its lien now, prior to the debtor's discharge, and if the case is subsequently dismissed, Ford can not be restored to its pre-bankruptcy lien position. Section 349(b)(3), which addresses the revesting of property upon dismissal, could not be satisfied.

Conversion of the case to Chapter 7, on the other hand, is not an issue, as the amendment of § 348(f) in 1994 established that "valuations of property and of allowed secured claims in the Chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the Chapter 13 plan." 11 U.S.C. § 348(f)(1)(B). Ford's secured claim having been paid in full, conversion of the case now would result in the Chapter 7 trustee demanding the title, subject to any exemptions available to the debtor.

There is relevant, recent Circuit authority in *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.2000). In *Nolan*, the Court of Appeals held that a Chapter 13 debtor could not modify a confirmed plan under § 1329(a) so as to surrender a vehicle and require the lien creditor to accept the surrendered collateral in full satisfaction of its claim. The impact of *Nolan* on the present issue is one of realization that the Court of Appeals recognizes the effects of changing in any way the confirmed treatment of a secured claim, and the holding discourages such changes as would amount to alterations of the secured status. In the present case, although the secured portion of Ford's claim has been paid in the plan and the debtor currently remains in Chapter 13, the reality, as previously noted, is that nothing would prevent the debtor, after receipt of the title from Ford, from voluntarily dismissing her case. The loss of Ford's pre-bankruptcy position in the event of case dismissal would appear to be as significant a change in its status as the post-confirmation change rejected in *Nolan*.

The solution in the present case is simple—the debtor may obtain the release of the title from Ford upon payment to Ford, through the Chapter 13 trustee, of the 60% of Ford's unsecured claim. That is the amount to be paid in the confirmed plan, an amount to which Ford agrees. Although this will result in payment of one unsecured claim ahead of others, on balance, this is beneficial to all unsecured creditors. The debtor would be permitted to purchase another vehicle, thus facilitating continued employment and mainte-

---

**1.** Such release language would have to be adequately noticed prior to confirmation to the affected secured creditor, giving that creditor an opportunity to object. Because in this judicial district, confirmation is fast-tracked, the plan proponent would have the responsibility of establishing that adequate notice was provided.

nance of plan payments for the benefit of all creditors.

## CONCLUSION

Because of the harm to Ford through the reality that the debtor could dismiss her case after obtaining release of the lien, the Court will not require Ford to release its lien on the title before the debtor's discharge, unless Ford is paid the 60% expected distribution on its unsecured claim.