**In re Ricky J. RHEAUME, Debtor.**

No. 02–11788.

United States Bankruptcy Court,
D. Vermont.

Aug. 5, 2003.

314

Kathleen Walls, Middlebury, VT, for Debtor.

Martin A. Mooney, Deily, Mooney & Glastetter, LLP, Albany, NY, for Creditor.

### AMENDED [1] MEMORANDUM OF DECISION

COLLEEN A. BROWN, Bankruptcy Judge.

The Court has raised, on its own initiative, the question of whether a particular provision of the Debtor's chapter 13 plan (hereinafter, the "Plan") [2] is consistent with the requirements of chapter 13 of the Bankruptcy Code.[3] The language in question reads:

> Creditors holding secured claims shall retain their liens only to the extent of their allowed secured claims. To the extent that the allowed secured claim is paid during this case or thereafter, such creditors' lien shall be reduced. Once

an allowed secured claim has been paid in full, either during or after the pendency of this case, the creditor holding such claim shall promptly mark any lien securing such claim as satisfied in the appropriate public records.

*See* Original Plan at ¶ 5 (doc. # 5).[4] Counsel for the Debtor and counsel for DaimlerChrylser Services North America LLC, the creditor most directly effected by this provision (hereafter the "Creditor" or "DaimlerChrylser"), have each filed memoranda of law.

### The Issues Presented

The inclusion of early lien release language in chapter 13 plans raises two issues: whether a chapter 13 plan may require an undersecured creditor to issue a lien release upon payment of the allowed secured portion of that creditor's claim, even if the allowed unsecured portion of the claim has not yet been paid; and, if so, what notice the debtor must provide to the creditor about the early release of the lien.

### Jurisdiction

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § § 157(b)(2)(L) and 1334.

---

1. This Decision has been amended to expand the explanation of the interplay between §§ 348, 349, 506(a), 506(d) and 1322(a)(5)(B). *See* pages 6–7 below.

2. The Court confirmed the Debtor's First Amended Plan subject to a determination of this issue. *See* Findings and Order Confirming Chapter 13 Plan (hereinafter, the "Confirmation Order") (doc. # 24). Moreover, the Court has subsequently confirmed several other plans prepared by the Debtor's attorney which contain the same language, and those plans have been confirmed with the same caveat.

3. All statutory references herein refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise specified.

4. The language in question is quoted from the Debtor's original Plan (doc. # 5). According to the Debtor, "The First Amended Plan [ (doc. # 17), the Plan that was confirmed by the Court's Confirmation Order] inadvertently omitted that language and inserted somewhat contradictory language. It is the intent of the Debtor that the language contained herein should supercede the language contained in paragraph 3b of the First Amended Plan." Debtor's Mem. Supp. at n. 4 (doc. # 30). Thus, for purposes of this inquiry and decision, the Court shall substitute the language found in ¶ 3(b) of the First Amended Plan with the language found in ¶ 5 of the original Plan (doc. # 5), as that is the language in question. Further, hereinafter, the "language in question" shall be referred as the "early lien release language."

## Discussion

In chapter 13, a debtor may modify the rights of the holder of an undersecured claim by bifurcating the claim into two distinct claims: a secured claim, equal to the value of the collateral, and an unsecured claim, equal to the balance of the debt; and may treat each component of the claim according to its distinct classification. This differentiated treatment of an allowed claim, where the value of the collateral securing the claim is less than the amount due, is colloquially known as a "cram down," and is expressly authorized by 11 U.S.C. § 1325(a)(5):

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
>     *     *     *     *     *     *
>
> (5) with respect to each allowed secured claim provided for by the plan—
>
> > (A) the holder of such claim has accepted the plan;
> >
> > (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> >
> > (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount such claim; or
> >
> > (C) the debtor surrenders the property securing such claim to such holder;
>
>     *     *     *     *     *     *

The determinations of whether the claim is "an allowed claim" and how much of the allowed claim is "secured" is achieved by application of § 506(a).[5] Since there is no dispute as to the allowance of the Creditor's claim nor as to the valuation of the collateral securing the claim,[6] we need not address here the complexities of the mechanics of § 506(a).

### A. Factual Background

The material facts are undisputed. The Debtor filed for bankruptcy relief under chapter 13 on December 18, 2002, and filed a chapter 13 plan on January 2, 2003. The Debtor listed the Creditor's claim on his schedules at a value of $12,070, *see* Schedule B—Personal Property, and in his original Plan with a valuation of $12,000, *see* original Plan at ¶ 2b, and describing it as secured by a 1998 Dodge Ram (the "Collateral"). The Creditor filed a Proof of Claim, asserting a claim in the amount of $17,021.16 and a collateral value of $14,950. *See* Claims Register, Claim # 2.

On February 26, 2003, the Debtor filed a First Amended Plan, which was confirmed on February 28, 2003, subject to a determination as to the validity of the early lien release language. The confirmed First Amended Plan provides that the Debtor will pay the Creditor $13,200 plus interest at the rate of 4% over a period of 60 months to satisfy the allowed secured portion of the claim, and a dividend of approximately 8%[7] on the allowed unsecured portion of the claim. Thus, if the Debtor

---

**5.** Section 506(a) provides, in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

**6.** The Creditor objected to the value of the collateral in the original Plan, but the Debtor apparently cured that objection by increasing the value of the collateral in his First Amended Plan (dated Feb. 26, 2003).

**7.** Debtor's First Amended Plan calls for all claimants with unsecured claims to share a total of $2,000, which amounts to approximately 8% of their claim. *See* First Amended Plan at ¶ 2d.

completes the Plan, the Creditor will receive $14,585.89 in satisfaction of its allowed secured claim and approximately $305 in satisfaction of its allowed unsecured claim for a total of $14,890.89 in satisfaction of its entire ($17,021.16) prepetition claim.

### B. Is the Proposed Early Lien Release Language Consistent with the Bankruptcy Code?

█ The crux of the dispute between the parties is simple: must the Creditor release its lien on the collateral upon payment of the chapter–13–created secured component of its claim, or is it entitled to retain its lien until its pre-petition-defined, single secured claim is paid? Resolving this dispute requires interpretation of a subtle, yet critical, term of chapter 13 relief. The Creditor argues that while the Debtor may be permitted to bifurcate the undersecured claim into two distinct claims for purposes of plan treatment, that does not prohibit the Creditor from retaining its lien until the secured claim is paid in full, as required by the contract between the parties, nor does it alter the rights of the Creditor under the proof of claim it filed identifying this debt as a single, secured claim. The Debtor and Creditor both seem to acknowledge that the Creditor is entitled to retain its lien until the allowed secured claim is paid in full—and that § 1325(a)(5) prohibits confirmation of a plan that does not so provide—but they depend upon radically different interpretations of § 1325(a)(5)'s phrase "allowed secured claim" to support their respective positions.

The Debtor argues that upon the allowance of the Creditor's claim in chapter 13, the claim is transformed into two distinct claims. Accordingly, the Debtor argues that the Creditor is entitled to a lien on the collateral only until the Creditor's

§ 506–reduced secured claim is paid in full, and that the unsecured claim, resulting from the § 506 transformation process, is in the same category as all other unsecured claims. Therefore, there is no basis for requiring that the lien remain intact until the unsecured component of the Creditor's original claim is paid. Although there is a pronounced split of opinion in the courts about whether an undersecured creditor in a chapter 13 case can be compelled to release its lien prior to payment of its entire claim, I find the better reasoned cases and the legislative history squarely support the Debtor's position.

The Debtor bases his argument primarily upon the plain language of § 1325(a)(5)(B) and *In re Kerwin,* 996 F.2d 552 (2d Cir.1993). In *Kerwin,* the Second Circuit addressed the question of whether a chapter 12 debtor could compel an oversecured creditor to discharge its lien upon the debtor's surrender of part of that creditor's collateral if the subject collateral had a value equal to the total amount due. The Second Circuit affirmed the bankruptcy and district courts' holdings that the cram down provisions of the Bankruptcy Code both permitted the debtor to treat the claim as fully satisfied, and required the creditor to release its lien on the balance of its collateral, upon the delivery of property equal to the full amount due.

The Creditor asserts that *Kerwin* is wholly distinguishable from, and not relevant to, the facts and circumstances of the instant matter. The *Kerwin* case involved chapter 12, rather than chapter 13; focused on § 1225(a)(5)(B), rather than § 1325(a)(5)(B); scrutinized a transfer of real property, rather than the payment of cash over time; and, considered a one-time payment in full of an oversecured claim, rather than a stream of payment over time of only the secured portion of an underse-

cured claim. Nonetheless, I find the *Kerwin* decision to be very instructive. First, the *Kerwin* case construed a Bankruptcy Code provision which is identical to the Code provision at issue here. Second, the *Kerwin* case addressed the cram down issue in the context of Vermont state law. Third, the ultimate question in both cases is whether a debtor can modify the terms of a secured creditor's claim by requiring a discharge of the lien securing the claim prior to "full satisfaction" as that term is defined in the original contract between the parties. The *Kerwin* court made clear that, in the context of a reorganization case, the debtor may require the discharge of the lien under the cram down provision of the Bankruptcy Code, provided that the creditor's allowed secured claim is determined through the valuation process set forth in § 506(a) and the creditor's allowed secured claim has been fully satisfied. *Kerwin*, 996 F.2d at 559. Interestingly, the *Kerwin* court specifically relied upon the legislative history of § 1325(a)(5)(B) to support its analysis of the § 1225(a)(5)(B) issue before it:

> Moreover, while § 1225's legislative history is quite sparse, the legislative history of § 1325—on which § 1225 was patterned—supports allowing the transfer while finding the lien requirement satisfied. Congress based chapter 12 on chapter 13 in order to provide a bankruptcy process for family farmers similar to that available under chapter 13.

*Id.* (citing H.R. Conf. Rep. No. 958, 99th Cong., 2d Sess. 48 (1986), reprinted in 1986 U.S.C.C.A.N. 5246, 5249). While one might argue that the interpretation of § 1325(a)(5)(B) in *Kerwin* is merely dicta, the Court finds the contrary to be true; it appears to be the bedrock of the Second Circuit's analysis and must be given more deference than dicta would require.

Both parties urge this Court to rule in this matter based upon the plain language of § 1325(a)(5)(B). The only thing that is plain about the language of this Code section is that it is anything but plain. If it were plain, there would not be such a split among the courts—nor among these two parties—as to what the language of § 1325(a)(5)(B) means. As the parties have observed, the stumbling block is comprehending the phrase "each allowed secured claim." To paraphrase, § 1325(a)(5)(B) requires that, in order to be confirmable, a plan must provide that the holder of an allowed secured claim: (1) retain the lien securing that claim; and (2) be paid the value of its collateral through the plan (with that value to be measured as of the effective date of the plan). The Debtor argues that the Creditor's "allowed secured claim" is the secured portion of the bifurcated claim after the § 506 transformation process, whereas the Creditor argues that its "allowed secured claim" is the claim set forth on its proof of claim, notwithstanding the § 506 bifurcation. I find that the language of § 1325(a)(5)(B) is ambiguous, and that the ambiguity must be resolved by construing it in a fashion which is consistent with other, related provisions of the Bankruptcy Code. *See Kerwin*, 996 F.2d at 556.

There have been conflicting interpretations of § 1325(a)(5)(B) precisely because the reference to "allowed secured claim" is not clear, and its interpretation invites analysis of how the risks and benefits of a chapter 13 cram down should be allocated between the debtor and creditor. The Creditor relies upon *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), to advance its risk-and-benefits argument, but misconstrues the windfall. In point of fact, if the Creditor's analysis of § 1325(a)(5)(B) were adopted, creditors might regularly experience a windfall since the value of a debt-

or's collateral is often insufficient to satisfy a creditors' claims. For the statute to be fair, it must be understood and applied in a way that would either provide no windfalls at all or be susceptible only to random windfalls that would not favor one party over the other. It is my perspective that Congress skillfully removed the likelihood of either party regularly obtaining a windfall through chapter 13 when it enacted § 506(a). By establishing a system whereby a creditor is permitted to retain its lien until said creditor is paid a sum equal to the value of its collateral as of the effective date of the plan, Congress has fairly allocated the risk and benefits and has, for the vast majority of circumstances, effectively diffused the windfall argument. *See 4 Collier on Bankruptcy* ¶ 506.03[4][a][iii] (15th ed. rev.2003). Therefore, I find the Creditor's argument based upon the *Butner* case to be unpersuasive.

There are many court decisions which hold that a debtor may not compel a creditor to issue a lien release until both the secured and unsecured components of an undersecured claim are paid through the plan. These courts have tended to focus on the unique nature of the cram down, the lower interest rate the debtor may have obtained in the underlying loan because of the presence of collateral, and the risks to a creditor in the event the case is dismissed or converted prior to payment of the unsecured portion of the claim. *See, e.g., In re Thompson,* 224 B.R. 360 (Bankr. N.D.Tex.1998); *In re Pruitt,* 203 B.R. 134 (Bankr.N.D.Ind.1996); *In re Scheierl,* 176 B.R. 498 (Bankr.D.Minn.1995); *In re Jordan,* 164 B.R. 89 (Bankr.E.D.Mo.1994); *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich. 1993). However, I believe these cases fail to give sufficient weight to two salient factors.

First, in the event of conversion or dismissal, a creditor's lien is treated by §§ 348 and 349 in a fashion consistent with allowing a debtor to require a non-contingent, early discharge of lien in a chapter 13 case. Since the Creditor, and several courts, base their rationale in opposition to early lien release on what it perceived to be conflicting treatment of an undersecured creditor's lien in the event of conversion or dismissal, these possible eventualities warrant further exploration here.

When a chapter 13 case is converted to chapter 7 after the allowance of a bifurcated undersecured claim, the Bankruptcy Code makes clear that: (1) the valuation of the undersecured creditor's collateral carries over to the chapter 7 case unchanged; and, (2) the amount due on the allowed secured portion of the claim is equal to the allowed secured claim minus payments made through the chapter 13 plan. *See* § 348(f)(1)(B). If the allowed secured portion of the claim has been paid in full (through the chapter 13 plan) prior to conversion of the case to chapter 7, the creditor has only an unsecured claim in the chapter 7 case; its secured claim having been extinguished—and its lien discharged—upon payment of the allowed secured portion of the claim. If, by contrast, the debtor has not completed the payments on the allowed secured portion of the claim in the chapter 13 case prior to conversion to chapter 7, then the creditor still has an allowed secured claim which is carried into the chapter 7 case, with the creditor's lien still in place. Since § 506(a) is also applicable in chapter 7, the creditor's claim in chapter 7 is secured only to the extent of its lien; and, subject to certain restrictions not relevant here, the chapter 7 debtor may compel release of the lien and obtain possession of the collateral by paying the creditor a sum equal to the value of the collateral, through a redemption, notwithstanding that the amount owed is greater. *See* § 722. Hence, in the event of conversion from

chapter 13 to chapter 7, the creditor is subject to the same type of early lien satisfaction in chapter 7 as it is, under this Court's reading of § 1325(a)(5)(B)(i), in chapter 13.

Parallel treatment of the undersecured creditor's claim and lien occurs when a chapter 13 case is dismissed: the transformation of the undersecured claim into a partially secured portion and a partially unsecured portion, based upon the valuation of the collateral, is undisturbed. *See* § 349. The Bankruptcy Code provision dealing with the effect of dismissal instructs:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>
> > (1) reinstates—
> >
> > > (A) any proceeding or custodianship superseded under section 543 of this title;
> > >
> > > (B) any transfer avoided under sections 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2) or 551 of this title; and
> > >
> > > (C) *any lien avoided under section 506(d) of this title.*

11 U.S.C. § 349(b)(1) (emphasis added). In the instant case, there has been no avoidance of a lien under § 506(d); the only application of § 506 has been the determination of the extent of the allowed secured claim under § 506(a), and that provision is equally applicable in chapter 7 and chapter 13. *See* § 103(a). As in the event of a conversion, if the dismissal of the case occurs prior to the debtor making all payments due on the allowed secured portion of the claim through the plan, the creditor's lien remains intact, and the creditor may pursue its state law rights against both the debtor and the collateral upon dismissal. If, by contrast, the debtor has paid the allowed secured portion of the claim in full prior to dismissal, the debtor is entitled to the lien release and the creditor is left with only an unsecured claim post-bankruptcy. In sum, the dismissal of the case has no impact on the early lien release requirement and the granting of the lien release is not contingent upon the debtor's payment of the creditor's "entire" claim. The only obligation the debtor must fulfill in order to obtain and retain an early lien release is the payment in full of the allowed secured portion of the undersecured claim. If the debtor satisfies that obligation, the creditor must release the lien even if the case is dismissed before the debtor completes the plan.[8] This interpretation of § 1325(a)(5)(B)(i) is consistent with treatment of that lien, under §§ 348 or 349, in the event of conversion or dismissal of the case.

Second, when there is a contest between whether to interpret the Bankruptcy Code in a manner which gives greater weight to a debtor's right to reorganize or a creditor's right to the benefit of its bargain, one must look to the intent of Congress, *vis a vis* the specific provision, for direction. As the preeminent treatise on bankruptcy observes of congressional intent on this question:

> In light of its [reorganization] purpose, it seems clear that to meet this confirmation standard [of § 1325(a)(5)(B)(i) ] the plan need only provide that the lien will be retained until all payments at-

---

**8.** This is to be distinguished from a lien avoided under § 522(f): lien avoidance relief granted because the lien impairs the debtor's exemption is contingent upon the debtor's completion of the case. The dismissal statute expressly states that a lien avoided under § 522 is reinstated if the case is dismissed, *see* § 349(b)(1)(B), whereas there is no corollary reinstatement of a lien bifurcated under §§ 506(a) and 1325(a)(5)(B)(i).

tributable to the allowed secured claim have been received by the holder of that claim. Indeed, the legislative history accompanying the addition of the lien retention language to § 1325(a)(5) states specifically:

> *Of course, the secured creditors' lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full.* Thus the lien created under section 1325(a)(5)(B)(i) is effective only to secure payments to the extent of the amount of the allowed secured claim. To the extent the deferred payments exceed the value of the allowed amount of the secured claim and the debtor subsequently defaults, the lien will not secure unaccrued interest represented in such deferred payments.

*8 Collier on Bankruptcy* ¶ 1325.06[3][a] (15th ed. rev.2003) (quoting 124 Cong. Rec. H11,107 (Sept. 28, 1978); 124 Cong. Rec. S17,424 (Oct. 6, 1978)) (emphasis added). While the text of the statute may be less than clear, the same cannot be said of the legislative history. The legislative history is unequivocal in its observation that the lien required by § 1325(a)(5) remains intact until the § 506–created secured portion of the claim is satisfied. The Court finds Congress's intent to be abundantly clear. Given such clear direction from Congress, the Court is both precluded from adopting the interpretation favored by the Creditor and bound to adopt the Debtor's interpretation of § 1325(a)(5)(B)(i). *See generally Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

In this regard, I find the rationale of *In re Nicewonger,* 192 B.R. 886 (Bankr. N.D.Ohio 1996), to set forth the most thorough and persuasive analysis of this question. In that case, the bankruptcy court analyzed all of the relevant Code provisions and the corresponding legislative history and concluded that the holder of an allowed secured claim can be required to release its lien upon receiving payment through the chapter 13 plan in an amount equal to the collateral's value. *See id.* at 891. Importantly, the *Nicewonger* court found this conclusion to be consistent with the language and intent of the Bankruptcy Code, particularly as evinced in the 1994 amendment of 11 U.S.C. § 348(f)(1)(B), *see id.* at 890, and the language of § 506(d), *see id.* at 889. Finding the *Nicewonger* court's analysis to be thorough and correct, this Court adopts its rationale and holding as further support for today's ruling. *See also In re Hernandez,* 175 B.R. 962 (N.D.Ill.1994); *In re Cooke,* 169 B.R. 662 (Bankr.W.D.Mo.1994); *In re Schultz,* 153 B.R. 170 (Bankr.S.D.Miss.1993); *In re Lee,* 156 B.R. 628 (Bankr.D.Minn.1993); *In re Murry–Hudson,* 147 B.R. 960 (Bankr. N.D.Cal.1992).

### C. What Notice Must the Debtor Provide to the Creditor to Effect this Treatment?

■ The Creditor has raised the issue that the Debtor did not include the early lien release language in the First Amended Plan, even though it had been included in the original Plan. This raises a legitimate issue of notice. This Court has frequently stated from the bench that it will not countenance litigation strategies or plan provisions that attempt to obtain relief without sufficient and conspicuous notice. I have categorized relief obtained in this way, *i.e.,* without sufficient notice, as "relief through ambush" and have entertained subsequent motions to re-open such matters and/or set aside the relief obtained through such surreptitious means. In this District, a provision compelling an un-

dersecured creditor to release its lien before completion of a chapter 13 plan is new and unusual. While creditors are certainly under an obligation to read plans and to assert their objections in a timely fashion if they oppose the relief sought in the plan, *see, e.g., In re Crowley,* 258 B.R. 587 (Bankr.D.Vt.2000); *see also In re Chappell,* 984 F.2d 775, 782 (7th Cir.1993), it is equally true that the relief being sought must be articulated clearly and, particularly if it is unusual relief, conspicuously set forth in the text—that is to say, not "buried" among boilerplate provisions. *See, e.g., In re Friedman,* 184 B.R. 890 (N.D.N.Y.1995) (due process violations resulted in striking provision from confirmed plan where creditor's claim was not identified with sufficient specificity); *see generally Mullane v. Central Hanover Bank and Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (notice must be reasonable under the circumstances).

Interestingly, the Creditor has cited *In re Woods,* 257 B.R. 876 (Bankr.W.D.Tenn. 2000), in support of its position that the proposed language is not consistent with the mandates of § 1325(a)(5)(B)(i). While I do not find that the *Woods* case supports the Creditor's analysis as to that statute, I find that it is very relevant to the issue of notice. The *Woods* case turns upon the question of whether a debtor may compel a creditor to issue a lien release upon payment of the allowed secured portion of the claim when the plan does not contain a provision to that effect. In the instant case, the Debtor's original plan did contain a provision which mandated early lien release—the provision that prompted the instant inquiry—but, the First Amended Plan, which is the plan that was confirmed, does not contain an early lien release mandate.

■ In this and other cases, Debtor's counsel has included a provision to manifest a debtor's intent to require the undersecured creditor to release its lien upon payment of the allowed secured portion of the claim as part of the boilerplate provision of the plan. While I now find that the Debtor may include early lien release language in his Plan, requiring the Creditor to release its lien upon the Debtor's payment in full of the allowed secured portion of the bifurcated claim, I also find that such language must be clear, conspicuous and consistent with the Bankruptcy Code. I find the proposed language here does not meet these three criteria.

For the Debtor's early lien release language to be clear and consistent with the Bankruptcy Code, the Debtor must amend the provision, striking the language set off in brackets below—or otherwise reformulate it—to make clear that the early lien release is required only if the allowed secured portion of the claim is paid in full through the chapter 13 plan:

> Creditors holding secured claims shall retain their liens only to the extent of their allowed secured claims. To the extent that the allowed secured claim is paid during this case [or thereafter], such creditors' lien shall be reduced. Once an allowed secured claim has been paid in full [, either] during [or after] the pendency of this case, the creditor holding such claim shall promptly mark any lien securing such claim as satisfied in the appropriate public records.[9]

Further, since this early lien release requirement, heretofore, has not been the practice in this District, and because the

---

**9.** State law shall make clear the method of computing the extent of the lien based upon payments made, and the terms for discharge of the lien, outside of the bankruptcy case. Therefore, no reference to payments outside the plan are appropriate in this provision.

language of the provision, as proposed, blurs the line between what part of the lien release language deals with payments made through the plan and what part deals with payments made outside the context of the chapter 13 case, I find this proposed plan provision is not sufficiently conspicuous. This is a due process defect that must be remedied. Therefore, the Court shall order the confirmation hearing in this matter to be reopened, and the parties shall be directed as follows:

(1) the Debtor shall file a Second Amended Plan, identical to his First Amended Plan except that the language dealing with the Daimler-Chrylser lien shall be modified to identify the Creditor specifically and to otherwise comport with the instructions set forth above; and the Debtor shall serve said amended plan upon the Creditor and the Chapter 13 Trustee within 10 days of the Court's corresponding Order, with a default notice providing those parties with 15 days (from the date of service of said amended plan) to object to it;

(2) DaimlerChrysler's right to object to the Second Amended Plan shall be limited to objections alleging that the early lien release language does not comport with this Court's ruling or disputing the Debtor's valuation of the allowed secured portion of its claim; [10] and

(3) the Chapter 13 Trustee shall file a proposed confirmation order relating

to the said amended plan, within 10 days' receipt thereof, and, if there are no objections to the said amended plan by the date set for filing of objections, the Court may enter the confirmation order without further hearing.

### Conclusion

For the reasons set forth above, I find that it is consistent with the Bankruptcy Code for the Debtor's Plan to require the Creditor to release its lien upon the Debtor's payment in full of the allowed secured portion of the claim. I further find that the Debtor's chapter 13 Plan must articulate any early lien release treatment in a way that is clear, conspicuous and consistent with the Bankruptcy Code.

This Amended Memorandum of Decision constitutes the Court's findings of fact and conclusions of law.

### Amended * ORDER Allowing Early Lien Release Language in Chapter 13 Plan

In conjunction with the Court's Amended Memorandum of Decision, of even date, regarding whether the Debtor may include an "early lien release" provision in his confirmed chapter 13 Plan,

THE COURT FINDS inclusion of early lien release language does not violate the requirements of chapter 13. A creditor whose claim has been bifurcated pursuant to § 506(a) may be required to release its lien upon the payment of the secured portion of its claim, through a debtor's chap-

---

10. It appears that the Creditor may have stipulated to the valuation of the collateral in the First Amended Plan because the First Amended Plan omitted the early lien release language that was found in Debtor's original Plan. To the extent this is true, the Creditor is permitted to reconsider that stipulation in light of the re-insertion of early lien release language.

* This Amended Order is being issued in conjunction with the Court's Amended Memorandum of Decision, of even date, to ensure the parties' right to appeal is not compromised. Except for ordering the vacatur of the Court's prior Order (doc. # 55, "amended" by doc. # 57), this Order is identical in substance to the Court's prior Order.

ter 13 plan, as more fully discussed in the Court's Amended Decision of Memorandum.

THE COURT FURTHER FINDS, however, that Debtor's proposed early lien release provision is not sufficiently clear or conspicuous; and therefore,

IT IS HEREBY ORDERED that the confirmation hearing in this case is to be reopened.

IT IS FURTHER ORDERED that:

(1) the Debtor shall file a Second Amended Plan, identical to his First Amended Plan except that the language dealing with the Daimler-Chrylser lien shall be modified to identify Creditor DaimlerChrylser specifically and to otherwise comport with the instructions set forth in the Court's Amended Memorandum of Decision; and

(2) the Debtor shall serve said amended plan upon Creditor DaimlerChrysler and the Chapter 13 Trustee within 10 days of this Order, with a default notice providing Creditor Daimler-Chrysler and the Chapter 13 Trustee with 15 days (from the date of service of said amended plan) to object to it; and

(3) Creditor DaimlerChrysler's right to object to the Second Amended Plan shall be limited to objections alleging that the early lien release language does not comport with this Court's Amended Memorandum of Decision or disputing the Debtor's valuation of the allowed secured portion of its claim (as further detailed in the Court's Amended Memorandum of Decision); and

(4) the Chapter 13 Trustee shall file a proposed confirmation order relating to the said amended plan, within 10 days' receipt thereof. If there are no objections to the said amended plan by the date set for filing of objections, the Court may enter the confirmation order without further hearing.

IT IS FURTHER ORDERED that the Court's prior Order addressing this contested matter (doc. # 55, "amended" by doc. # 57) is vacated.

**SO ORDERED.**