Ellen E. MONAHAN, Debtor.

United States of America, Appellant,

v.

Ellen E. Monahan, Appellee.

BAP No. MB 12–084.
Bankruptcy No. 07–11974–WCH.

United States Bankruptcy Appellate Panel
for the First Circuit.

Sept. 19, 2013.

Kathryn Keneally, Esq., Julie Avetta, Esq., and James E. Brown, Esq., on brief, for Appellant.

Nina M. Parker, Esq., and Kate E. Nicholson, Esq., Winchester, MA, on brief, for Appellee.

Before HAINES, DEASY, and GODOY, United States Bankruptcy Appellate Panel Judges.

DEASY, Bankruptcy Judge.

The United States of America, Internal Revenue Service (the "IRS") appeals from: (1) a bankruptcy court order granting the debtor's Motion for Determination of a Violation of the Discharge Injunction and Request for Protective Order (the "Determination Motion"); and (2) the bankruptcy court's denial of reconsideration. For the reasons discussed below, we **REVERSE** the Determination Motion and deem waived the appeal of the order denying reconsideration.

## *BACKGROUND*

The debtor filed a voluntary petition for chapter 13 relief in April 2007. In Decem-

ber 2007, the IRS filed an amended proof of claim, reflecting that, as of the petition date, it held an unsecured priority claim in the total amount of $96,472.43, pursuant to § 507(a)(8).[1] The claim was for pre-petition civil penalties assessed pursuant to 26 U.S.C. § 6672 (Internal Revenue Code),[2] for failure to pay so-called trust fund taxes, and did not include any post-petition interest.

In May 2007, the debtor filed and served her initial chapter 13 plan, which provided for payment in full of the allowed priority tax claim of the IRS over the course of the 60–month life of the plan. The debtor subsequently filed and served a First Amended Plan (the "Amended Plan"), which, like its predecessor, provided for the payment in full of allowed priority tax claims. The Amended Plan provided for no distributions to allowed non-priority unsecured claims.

Absent objection, the court confirmed the Amended Plan in September 2008. Thereafter, the debtor made all of the payments required under the Amended Plan, and in May 2012, she filed a motion for the entry of her discharge. After receiving the trustee's final report, the bankruptcy court entered the discharge order, also without objection. The discharge order provided that "all allowed claims have been fully paid in accordance with the provisions of the confirmed plan." The explanation page appended to the discharge order further provided: (1) "the debtor ha[d] completed all payments under the chapter 13 plan"; (2) the "chapter 13 discharge order eliminate[d] a debtor's legal obligation to pay a debt that is discharged"; and (3) "[d]ebts for certain taxes to the extent not paid in full under the plan" were not discharged.

Following the entry of the discharge order, the IRS sent four Notices of Intent to Levy to the debtor. In the first notice, the IRS indicated that the debtor owed "interest charges" of $5,332.05 for the tax year ending June 30, 2003. In the second notice, the IRS indicated that the debtor owed interest charges of $3,697.31 for the tax year ending December 31, 2003. The third notice reflected interest charges of $2,302.69 due for the tax year ending September 30, 2004. The last notice reflected interest charges of $6,026.03 for the tax year ending December 31, 2004. In each notice, the IRS warned:

> If you don't call us immediately or pay the amount due ... we may seize ("levy") any state tax refund to which you're entitled ...
>
> If you still have an outstanding balance after we seize any state tax refund, we may take possession of your other property or your rights to property.

After receiving the notices, the debtor repeatedly asked the IRS to suspend the threatened levy, on the grounds that the IRS's claim was paid in full under the Amended Plan. Citing *Internal Revenue Serv. v. Cousins (In re Cousins)*, 209 F.3d 38 (1st Cir.2000), the IRS insisted that it was entitled to collect post-petition interest

---

1. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

2. Section 6672 of the Internal Revenue Code provides, in pertinent part:

 (a) **General Rule.**—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

 26 U.S.C. § 6672.

on its priority tax claim, and refused to halt the seizure action.

The debtor therefore filed the "Determination Motion, in which she asked the court for an immediate determination as to whether the IRS's actions constituted a willful violation of the discharge injunction under § 524, and an order halting the threatened seizure action. In support, the debtor asserted: (1) she timely payed the IRS the full sum set forth in the amended proof of claim in accordance with the terms of the Amended Plan; (2) the IRS never objected to her motion for entry of discharge or to the Amended Plan; (3) the IRS's claim fell within the scope of her discharge; and (4) *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) overruled *Cousins*.

The bankruptcy court conducted a hearing on the Determination Motion in October 2012. The debtor argued during the hearing that: (1) the "IRS received notice" (presumably of the pendency of confirmation proceedings); (2) the IRS's amended proof of claim "did not indicate that they were going to be asserting any interest after the fact and there's nothing in the Code per se that says that . . . this claim is entitled to interest"; and (3) the IRS did not appeal the confirmation order. Relying on *Espinosa*, the debtor asserted that the IRS was bound by the confirmation order. She added: "We are not seeking a discharge of the debt. We paid the debt."

The IRS countered that the rule under *Cousins*, which remains good law after *Espinosa*, is that "post-petition accruals . . . remain nondischargeable." The IRS distinguished the instant case from *Espinosa*, by arguing that in *Espinosa*, "the plan specifically provided that the student loan debt would be discharged," while there was "no such provision here in the plan." Lastly, the IRS asserted that the

discharge order specifically noted that "there [were] taxes that [were] nondischargeable."

The bankruptcy court granted the Determination Motion, ruling from the bench as follows:

> IRS never specifically sought post-petition interest and so what they were—it was claimed they would do and what they said they would do is the amount that they were paid. Now I don't have any problem agreeing with the debtor here. I don't even think I need *Espino[s]a* because I think IRS got what it claimed it wanted and it got it. It could have added one line to the proof of claim and said, "Plus interest as accrues after the filing of the petition under," I forgot what the section number is of the IRC. But they could have thrown that in and they did not.

> And so here we are years later and all of a sudden IRS raises its head and says, "Oh, no. We want interest." I'll give you three reasons why IRS has to lose. No. 1 is common sense. No. 2 is *Espino[s]a.* No. 3 is basic fairness.

> The debtor has to prevail here. The motion for determination of a violation is granted. Any action by IRS to collect this interest is inappropriate and a violation of the discharge injunction. An order to that effect will enter.

The IRS subsequently filed a motion for reconsideration (the "Reconsideration Motion") that the bankruptcy court denied. This appeal followed.

Relying on *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), and *Cousins*, the IRS maintains on appeal that the bankruptcy court "was not at liberty to substitute its own conceptions of 'common sense,' and 'basic fairness,' for a statutory exception to discharge." Second, the IRS argues that Official Form 10,

prescribed for proofs of claim, does not permit the inclusion of post-petition interest as part of its claim against the estate, and that such claims are instead properly asserted as a personal liability of the debtor. Third, the IRS contends that it could not have demanded post-petition interest through the Amended Plan, because a chapter 13 plan provides only for allowed claims, and allowed claims cannot include unmatured interest. According to the IRS, claims for such interest are, themselves, nondischargeable. Lastly, the IRS argues that the Determination Motion was procedurally improper.

Continuing to rely on *Espinosa,* the debtor counters: (1) confirmation of the Amended Plan bound the IRS to the amount provided for in the plan; (2) the IRS failed during the five-year pendency of her Amended Plan to provide notice of its claim for post-petition interest; and (3) the drafters of the Code could not have intended the absence of a space for entering the interest rate on the proof of claim form to amount to a " 'gotcha' clause."

### JURISDICTION

A bankruptcy appellate panel is " 'duty-bound' " to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.),* 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (quoting *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998)). A panel may hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *In re Bank of New England Corp.,* 218 B.R. at 645. We have previously ruled that "[d]eterminations as

to a violation of the discharge injunction are final orders." *Canning v. Beneficial Me., Inc. (In re Canning),* 462 B.R. 258, 263 (1st Cir. BAP 2011), *aff'd* 706 F.3d 64 (1st Cir.2013) (citations omitted). "Moreover, an order denying reconsideration is final if the underlying order is final and together the orders end the litigation on the merits." *Garcia Matos v. Rivera (In re Garcia Matos),* 478 B.R. 506, 511 (1st Cir. BAP 2012) (citations omitted). As the orders granting the Determination Motion and the Reconsideration Motion meet these criteria, we have jurisdiction over this appeal.

### STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo. Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.,* 592 F.3d 267, 269 (1st Cir.2010); *see also Ford Motor Credit Co. v. Morton (In re Morton),* 410 B.R. 556, 559 (6th Cir. BAP 2009) (stating that a "bankruptcy court's interpretation of [ . . . ] § 524 is reviewed *de novo* "). We review the bankruptcy court's decision denying the reconsideration motion for abuse of discretion. *In re Garcia Matos,* 478 B.R. at 511 (citations omitted). "A bankruptcy court abuses its discretion if it ignores a material factor deserving significant weight, relies upon an improper factor, or makes a serious mistake in weighing proper factors." *Id.* (citation omitted).

### DISCUSSION

Although the IRS identifies the bankruptcy court's denial of the Reconsideration Motion as one of the two issues on appeal in both its notice of appeal and in its statement of issues, it ignores the reconsideration issue in its brief, but for the unsupported request for reversal of the denial of reconsideration. Accordingly,

this issue is waived, *see Eakin v. Goffe, Inc. (In re 110 Beaver Street P'ship)*, 355 Fed.Appx. 432, 437 (1st Cir.2009), and our review is limited to the bankruptcy court's determination that the IRS's post-discharge collection efforts violated the discharge injunction.

While the debtor and the IRS focused much of their arguments on the application of *Espinosa* to the circumstances of this case, the matter turns on the type of tax debt at issue, and the statutory provisions providing for discharges in chapter 13 proceedings.

## I. Section 502: Proofs of Claim and Post-petition Interest

Section 502 provides, in pertinent part, that:

(a) A claim or interest, proof of which is filed under [§ ] 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

. . .

(2) such claim is for unmatured interest[.]

11 U.S.C. § 502.

■ Thus, based on § 502, courts have held that "creditors are not entitled to include unmatured (or 'post-petition') interest as part of their claims in the bankruptcy proceedings." *Leeper v. Pa. Higher Educ. Assistance Agency, (PHEAA)*, 49 F.3d 98, 100–101 (3d Cir.1995) (citing 11 U.S.C. § 502(b); *Sexton v. Dreyfus*, 219 U.S. 339, 344, 31 S.Ct. 256, 55 L.Ed. 244 (1911)); [3] *see also Educ. Credit Mgmt. Corp. v. Kirkland (In re Kirkland)*, 600 F.3d 310, 317 (4th Cir.2010) (stating § 502(b)(2) prohibits post-petition interest from being included in a proof of claim filed by student loan creditor against the bankruptcy estate). "This longstanding rule is designed to assure that no creditor gains an advantage or suffers a loss due to the delays inherent in liquidation and distribution of the estate." *Leeper*, 49 F.3d at 101 (citing *Am. Iron & Steel Mfg. Co. v. Seaboard Air Line Ry.*, 233 U.S. 261, 266, 34 S.Ct. 502, 58 L.Ed. 949 (1914); *Hanna v. United States (In re Hanna)*, 872 F.2d 829, 830–31 (8th Cir.1989)).

## II. Section 1322: Payment of Claims in Chapter 13

Section 1322(a) governs what a chapter 13 plan must do. Section 1322(b) governs what a plan may do, subject to certain limitations.

■ Section 1322(a)(2) requires that a plan "provide for the full payment, in deferred cash payments, of all claims entitled to priority under [§ ] 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." Relevant to this case, § 507(a)(8) grants priority status to many tax claims.[4] Accordingly, a chapter 13 plan must pro-

---

3. Although courts recognize limited exceptions to the general prohibition on the payment of post-petition interest from the estate, *see Willauer v. United States Internal Revenue Serv. (In re Willauer)*, 192 B.R. 796, 801 (Bankr.D.Mass.1996) (citation omitted), those exceptions are inapplicable here.

4. Section 523(a)(1)(A) provides the general rule that priority claims under § 507(a)(8) are nondischargeable. This is why the chapter 7

vide for the payment of priority tax claims in the full amount of the allowed claim, without post-petition interest, in order to comply with the requirements of the Code and satisfy the confirmation standard in § 1325(a)(1).

■ The overwhelming majority of chapter 13 plans do not provide for post-petition interest on unsecured claims for two reasons. First, a chapter 13 plan can only provide for allowed claims. As discussed above, § 502(b)(2) prohibits a claim from including unmatured interest. Thus, an allowed unsecured claim does not include unmatured post-petition interest, and the chapter 13 plan may not provide for payments outside of the allowed claim. Second, § 1322(b)(10) provides the lone exception in which a plan *may* provide for the payment of interest accruing after the petition date on unsecured claims. Section 1322(b)(10) allows for the payment of post-petition interest "on unsecured claims that are nondischargeable under section 1328(a)," only when "the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims." *See In re Edmonds,* 444 B.R. 898, 902 (Bankr.E.D.Wis. 2010) ("[P]ost-petition interest cannot be paid unless the plan provides that all of the unsecured creditors will be fully paid. Sec[tion]. 1322(b)(10) is very clear in its wording."). In other words, a debtor can provide for the payment of post-petition interest *on nondischargeable claims only if* the debtor proposes a "100% plan," and only if the debtor has excess disposable income with which to do so. Such situations are rare.

### III. Sections 1328 and 524: The Scope of Discharge and the Discharge Injunction

Section 1328(a)(2), which governs the discharge of a chapter 13 debtor, provides,

in relevant part, that "after completion by the debtor of all payments under the plan," the court shall "grant the debtor a discharge of all debts *provided for by the plan* or disallowed under [§ ]502 ..., except any debt of the kind specified in [§ ] *507(a)(8)(C)* or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)[.]" 11 U.S.C. § 1328(a)(2) (emphasis added). The debts specified in § 507(a)(8)(C) are "allowed unsecured claims of governmental units, only to the extent that such claims are for ... a tax required to be collected or withheld and for which the debtor is liable in whatever capacity[.]" 11 U.S.C. § 507(a)(8)(C). The IRS asserts—and the debtor does not dispute—that the trust fund recovery penalties assessed under 26 U.S.C. § 6672 in this case come within the scope of § 507(a)(8)(C) and are therefore excepted from discharge.

■ In the typical chapter 13 case with priority tax claims, a debtor has priority tax claims under § 507(a)(8) for unpaid income taxes due for recent tax years. *See* 11 U.S.C. § 507(a)(8)(A). To be confirmable, the chapter 13 plan would have to pay those claims in full over the life of the plan. 11 U.S.C. § 1322(a)(2). As discussed above, the chapter 13 plan would not—and generally could not—pay post-petition interest to the extent it accrued on those claims. However, upon the completion of all payments under the plan and the issuance of a discharge, the *entire* priority tax claim is discharged, because such debt was "provided for by the plan." *See* 11 U.S.C. § 1328(a). Thus, successful completion of a chapter 13 plan allows for the discharge of priority tax debts that are generally nondischargeable outside of chapter 13 under § 523(a)(1)(A) (as it ex-

discharge does not discharge a debtor of lia- bility on priority tax claims.

cepts all tax debts under § 507(a)(8) from discharge).

■ When the priority tax claim arises under § 507(a)(8)(C), the result is different because such tax claims are an exception to the general rule under § 1328. The debtor must still pay such claim in full without post-petition interest [5] (to the extent it accrues) if the chapter 13 plan is to be confirmed. However, because the claim is specifically excepted from discharge under § 1328(a)(2), the debtor remains liable for any unpaid portion of the claim, including any interest that accrues on the claim post-petition. *See Tashjian v. Internal Revenue Serv.*, 325 B.R. 56, 59 (D.Mass. 2005); *In re Sprolito*, 359 B.R. 423, 428 (Bankr.D.P.R.2006). This is similar to the result in a case where a debtor is not eligible for a discharge, or where the case is dismissed prior to the completion of plan payments and the issuance of a discharge. In every instance, the debtor is able to enjoy the protection of the automatic stay and pay the debts over time. However, upon completion of the plan without a discharge, or dismissal, the debtor remains liable for any unpaid amounts of the § 507(a)(8) priority tax claim, as well as any interest that accrued on the claim post-petition. *See Tashjian*, 325 B.R. at 59; *Sprolito*, 359 B.R. at 428. Note that in the absence of a completed plan and discharge, the debtor remains liable for *all* priority tax claims, to the extent they were not paid during the case, not just § 507(a)(8)(C) claims.

■ Pursuant to § 524, a discharge under chapter 13 "operates as an injunction against the commencement or continuation of an action, the employment of pro-

cess, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor...." 11 U.S.C. § 524(a)(2). "Significantly, the discharge injunction prohibits collection only with respect to dischargeable debts and does not apply to nondischargeable debts." *State of Fla. Dep't of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073, 1088 (11th Cir.2011) (citation and internal quotations omitted). Consequently, courts have held that "once a discharge has been granted, holders of *nondischargeable* debts generally may attempt to collect from the debtor personally for such debts." *Id.* (citation omitted) (emphasis in original).

## IV. The *Bruning* Rule and its Extensions

In *Bruning*, the Supreme Court addressed whether under the Bankruptcy Act a debtor's personal liability for post-petition interest on a debt for taxes survives bankruptcy to the extent it is not paid out of the estate. 376 U.S. at 362, 84 S.Ct. 906. The Court answered the question in the affirmative, stating that:

> [L]ogic and reason indicate that post-petition interest on a tax claim excepted from discharge by [§ ]17 [6] of the [Bankruptcy] Act should be recoverable in a later action against the debtor personally, and there is no evidence of any congressional intent to the contrary[.]

*Id.* at 360, 84 S.Ct. 906. Rejecting the debtor's fresh start, policy-based arguments, the Court declared:

> [Section] 17 is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that cer-

---

**5.** This is so unless the debtor fits within the narrow exception of § 1322(b)(10).

**6.** Section 17 of the Bankruptcy Act provided, in relevant part, that a "discharge in bankruptcy shall release a bankrupt from all of his

provable debts, whether allowable in full or in part, except such as (1) are due as a tax levied by the United States...." *Bruning*, 376 U.S. at 360, 84 S.Ct. 906.

tain problems—e.g., those of financing government—override the value of giving the debtor a wholly fresh start. Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy. The general humanitarian purpose of the Bankruptcy Act provides no reason to believe that Congress had a different intention with regard to personal liability for the interest on such debts.

*Id.* at 361, 84 S.Ct. 906 (footnote omitted).

The vast majority of courts, including the First Circuit, extend the application of *Bruning* to cases arising under the Code, to nondischargeable debts other than tax obligations, and to cases other than liquidation cases. *See, e.g., In re Cousins,* 209 F.3d at 40 (holding postpetition interest on nondischargeable tax debt remains nondischargeable in chapter 12 under the Code); *see also Diaz,* 647 F.3d at 1090 (holding post-petition interest on child support obligation is nondischargeable in chapter 13); *Salazar v. Comm'r Internal Revenue,* 338 Fed.Appx. 75, 78 (2d Cir.2009) (holding debtors "would have remained liable on their non-dischargeable liability—including interest—even had the IRS not filed a proof of claim in their bankruptcy proceeding"); *Foster v. Bradbury (In re Foster),* 319 F.3d 495, 497 (9th Cir.2003) (holding post-petition interest on child support obligation is nondischargeable and may be collected personally against the debtor); *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch),* 258 F.3d 315 (4th Cir.2001) (holding plan payments may be applied to post-petition interest on nondischargeable student loans); *Leeper,* 49 F.3d at 103–104 (holding *Bruning* applies to chapter 13 bankruptcies and to student loans in particular); *Burns v. United States (In re Burns),* 887 F.2d 1541, 1543 (11th Cir. 1989) (stating *Bruning* survived the enactment of the Code); *In re Hanna,* 872 F.2d at 830–31 (ruling same). As the Fifth Circuit explained, when it concluded that the *Bruning* rule remained good law after the enactment of the Code:

Taken together, sections 502 and 523 simply demonstrate Congress' intent to codify the general principle that applied under *Bruning.* Post-petition interest is disallowed against the bankruptcy estate under section 502. Priority tax claims remain nondischargeable for individual debtors. Under both the Act and the Code, Congress attempted to balance the interests of the debtor, creditors and the government, and in the instance of taxes and interest on such, Congress has determined that the problems of financing the government override granting debtors a wholly fresh start. H.R.Rep. No. 595, 95th Cong., 2d Sess. at 274 (1978), *reprinted in* 1978 U.S.Code Cong. and Admin. News 5963, 6231. Thus, post-petition interest is nondischargeable, and [the debtors] remain personally liable for that interest subsequent to bankruptcy proceedings.

*Johnson v. Internal Revenue Serv. (In re Johnson),* 146 F.3d 252, 260 (5th Cir.1998) (citing *Hanna,* 872 F.2d at 831).

Notwithstanding *Bruning* and *Cousins,* § 1328(a) discharges post-petition interest on tax claims that *can* be discharged through the completion of a chapter 13 plan and the issuance of a chapter 13 discharge. Similar treatment for some tax claims is not available under chapter 12. *Compare* 11 U.S.C. § 1328(a) (allowing for the discharge of certain priority tax claims) *with* § 1228(a) (incorporating § 523(a) in its entirety, making all priority taxes under § 507(a)(8) nondischargeable).

## V. *Espinosa*

In *Espinosa,* the Supreme Court addressed the binding nature of confirmation orders. There, a debtor with a nondis-

chargeable student loan filed a chapter 13 plan providing that he would pay only the principal on the loan and explicitly stating that the remainder, the accrued interest, would be discharged. 559 U.S. at 264, 130 S.Ct. 1367. The plan was served on the student loan creditor, who in response filed a proof of claim in an amount representing both the principal and the accrued interest. *Id.* at 265, 130 S.Ct. 1367. The creditor did not, however, object to the plan's proposed discharge of the student loan interest without a determination of undue hardship, nor did it object to the debtor's failure to initiate an adversary proceeding to determine the dischargeability of that debt. *Id.* The plan was confirmed by the bankruptcy court, and the chapter 13 trustee mailed to the creditor a notice stating that " '[t]he amount of the claim filed differs from the amount listed for payment in the plan' and that '[y]our claim will be paid as listed in the plan.' " *Id.* (citation omitted). The creditor did not respond to the trustee's notice. *Id.*

Three years following the entry of the discharge order, the United States Department of Education (the "Department") commenced efforts to collect the unpaid interest on the debtor's student loans. *Id.* at 266, 130 S.Ct. 1367. The debtor then asked the bankruptcy court to enforce the discharge order by directing the creditor and the Department to cease all collection efforts. *Id.* The creditor responded with a motion to vacate the confirmation order as void, on the grounds that: (1) there was no finding of undue hardship, which is a prerequisite to the discharge of a student loan debt; and (2) it was denied due process because the confirmation order was issued without service of a summons and complaint as required by the Code as a prerequisite to an adversary proceeding. *Id.*

The Supreme Court stated that "a proposed bankruptcy plan becomes effective upon confirmation ... and will result in a discharge of the debts listed in the plan if the debtor completes the payments the plan requires...." *Id.* at 264, 130 S.Ct. 1367 (citations omitted). The Court held, "[w]here, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate...." *Id.* at 276, 130 S.Ct. 1367. Thus, the Court further held that the terms of a confirmed plan bound a creditor who did not object to confirmation even though the treatment of the creditor's claim in the plan violated the Code. *Id.* at 275–76, 130 S.Ct. 1367.

 Courts have held that *Espinosa* stands for the "limited proposition that a confirmed plan is binding on all parties-in-interest, *provided the plan proponent afforded such parties adequate notice,* consistent with the Due Process Clause of the United States Constitution—even if the plan violates the Bankruptcy Code in some particulars." *In re Deavila,* 431 B.R. 178, 179 (Bankr.W.D.Mich.2010) (emphasis added); *see also In re Brodeur,* 434 B.R. 348, 351 n. 2 (Bankr.D.Vt.2010) (noting that *Espinosa* "defines the binding effect of confirmation orders on interested parties *who receive sufficient notice* ") (emphasis added). After *Espinosa,* a "creditor or other party in interest who chooses to sleep on its rights by not objecting to a plan does so at its own peril and *as long as due process requirements are met,* will be bound by it." *In re McLemore,* 426 B.R. 728, 744 (Bankr.S.D.Ohio 2010) (citation omitted) (emphasis added).

 In this case, the IRS does not dispute that it received notice of the filing of the Amended Plan. However, unlike *Espinosa,* the confirmed plan in this case did not provide for the discharge of the priority tax claim upon completion of the plan.

*Espinosa* instructs that "[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Espinosa*, 559 U.S. at 272, 130 S.Ct. 1367 (internal quotations and citations omitted). We previously stated in the context of plan confirmation, this means a "clear, open, and explicit statement of a secured creditor's treatment in a chapter 13 plan before the creditor's failure to object will be deemed implied acceptance." *Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437, 444 (1st Cir. BAP 2009) (citations omitted); *see also In re Rheaume*, 296 B.R. 313, 321 (Bankr. D.Vt.2003) (citations omitted) (stating while creditors are obligated to read plans and timely assert objections, "relief being sought must be articulated clearly and, particularly if it is unusual relief, conspicuously set forth in the text").

### CONCLUSION

Application of *Espinosa*, and the cases applying that decision, to the facts of this case yields the conclusion that the terms of the Amended Plan did not provide for the discharge of the priority tax claim. The Amended Plan only provided for the payment in full of the priority tax claim, as it was required to do under § 1322(a)(2). In the absence of language clearly providing for a discharge of the priority tax claim for so-called trust fund taxes, the debtor failed to give the IRS the clear, open, and unambiguous notice of any intent to discharge such claim which the decision in *Espinosa* and due process requires. In the absence of such notice, the priority claim remains nondischargeable under the provisions of § 1328(a)(2) and the standard articulated in *Bruning*. Because the discharge injunction does not apply to nondischargeable debts, we conclude that the bankruptcy court erred when it determined that the

IRS's collection efforts violated the discharge injunction.

Based on the foregoing, we **REVERSE** the order granting the Determination Motion.