**In re Ruth HERNANDEZ, Debtor.**

**No. 94 C 1009.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 13, 1994.

David A. Mucklow, David A. Mucklow, Ltd., Chicago, IL, for Ruth Hernandez.

John A. Cox, Jr., Towbin & Zazove, Ltd., James Michael Joyce, The Coston Law Group, Chicago, IL, for Volkswagen Credit Inc.

## *MEMORANDUM OPINION AND ORDER*

NORDBERG, District Judge.

This matter is before the Court on the Debtor's appeal from the bankruptcy court's order of December 30, 1993. That order provides that Volkswagen Credit Inc.'s ("VCI") lien on the debtor's automobile shall survive the completion of debtor's Chapter 13 plan, despite the fact that the plan calls for the complete payment of the secured portion of VCI's claim. This Court faces the question of whether a Chapter 13 debtor may strip down a lien on non-residential personal property to the current fair market value of the collateral.

### I. ·FACTS

In 1989, Ruth Hernandez, the Debtor, borrowed $13,310.07 from VCI to finance the purchase of a 1988 Volkswagen Jetta GL. On December 18, 1992, the Debtor filed a Chapter 13 petition. VCI filed a secured proof of claim in the amount of $9,422.20, supported by a lien of title on a 1988 Pontiac Grand Prix. On June 8, Debtor filed a motion objecting to the claim of VCI, seeking to bifurcate VCI's claim between secured and unsecured portions. The parties agree that the fair market value of the collateral is $5,924.50.

Debtor's Chapter 13 plan provided for 100% payment to all secured creditors and a 10% disbursement to unsecured creditors. The plan also provided, in language mirroring 11 U.S.C. § 1325(a)(5)(B)(i), that the holder of each allowed secured claim would retain the lien securing such claim. In re

*Hernandez*, 162 B.R. 160, 167 (Bankr.N.D.Ill. 1993).

The Bankruptcy Court issued its order on December 3, 1993. The order sustained Debtor's objection to the claim filed by VCI, limiting the secured claim to the agreed collateral value of $5,924.50 and treating the remainder owed as unsecured debt. In addition, the Bankruptcy Court provided that VCI's lien would survive the Chapter 13 plan and remain attached to the collateral until the debtor repaid both the secured and the unsecured portions of its loan. Debtor now appeals that decision.

## II. ANALYSIS

■ This appeal focuses on the Bankruptcy Court's interpretation of the Supreme Court case of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and its construction of various sections of the Bankruptcy Code. No issues of fact are raised on appeal. This Court will perform a *de novo* review of the challenged conclusions of law. *See In re Longardner & Assoc., Inc.*, 855 F.2d 455, 459 (7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989).

■ The Debtor challenges the Bankruptcy Court's decision on two grounds. The Debtor argues both that sections 1325 and 1327 of the Bankruptcy Code mandate that, at the time of the plan's confirmation, the estate's property be vested in the debtor free and clear of any creditor's lien not provided for in the plan itself and that the Bankruptcy Court improperly extended the Supreme Court's holding in *Dewsnup* to Chapter 13 debtors. For the reasons discussed in this opinion, the ruling of the Bankruptcy Court is reversed.

### A. Section 1325

Debtor challenges the Bankruptcy Court's interpretation of Section 1325,[1] which provides that:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325. The bankruptcy court interprets this section to require that VCI retain its lien until the entire indebtedness outstanding on VCI's loan is paid. After suggesting that Section 1325 is evidence of a congressional intent to support the "recognized principle that secured liens survive bankruptcy," the Bankruptcy Court writes, "Nothing in [Section 1325] says the secured creditor must retain only part of the lien measurable by collateral value." *In re Hernandez*, 162 B.R. 160, 165 (Bankr.N.D.Ill. 1993). This Court disagrees.

The phrase "retain the lien securing such claim" in Section 1325(a)(5)(B)(i), through its use of "such claim," refers back to the phrase "allowed secured claim" in Section 1325(a)(5). If Section 1325(a)(5)(B)(i) requires only that a secured creditor retain a lien to the extent a claim is allowed and secured, Section 1325 does allow a secured creditor to retain only the part of the lien measurable by collateral value. *See* 11 U.S.C. § 506(a).

The Bankruptcy Court, as noted earlier, reads Section 1325 to require the retention of a lien in the full amount of the indebtedness. This conclusion forces the Bankruptcy Court to resolve a perceived conflict between Section 1325 and Section 506(a). The Bankruptcy Court writes:

In the face of the plain wording of § 1325(a)(5)(B) and (C), it can hardly be said that Congress intended § 506(a) to trump § 1325(a)(5)(B) and (C) in Chapter 13, and intended that the § 506(a) provision applicable to all chapters would super-

---

1. All references to "Section" are to 11 U.S.C.

sede in Chapter 13 the § 1325 provision limited to that Chapter.

*Hernandez*, 162 B.R. at 165–66. The Bankruptcy Court overlooks the typical statutory construction, in which the term "allowed secured claim" in Section 1325 is defined by the explanation of that term in Section 506(a). However, even if the Bankruptcy Court had recognized the relationship between Section 506(a) and Section 1325, the meaning of "allowed secured claim" in Section 1325 is not clear, due to the holding of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

### B.  *Dewsnup v. Timm*

Prior to the Supreme Court's decision in *Dewsnup*, the meaning of "allowed secured claim" was informed by Section 506(a), which provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a). In *Dewsnup*, however, the Supreme Court decided that the phrase "allowed secured claim" in Section 506(d) meant a claim which was both allowed and secured, regardless of the extent of the security. *Dewsnup*, 502 U.S. at ——, 112 S.Ct. at 778. In doing so, the Court held that Chapter 7 debtors could not strip down liens to the value of the underlying collateral in liquidation proceedings. *Id.* The Court also rejected the argument that the meaning of "allowed secured claim" must be the same between Section 506(a) and 506(d). *Id.* Therefore, this Court is faced with two possibilities regarding the meaning of "allowed secured claim" in Section 1325; the *Dewsnup* Section 506(d) definition and the traditional Section 506(a) definition that provides that an allowed claim is an "allowed secured claim" to the extent it is secured. Put another way, this Court must decide whether to extend *Dewsnup* to Chapter 13.

The scope of *Dewsnup* is an open question in the Seventh Circuit. The Bankruptcy Court held that the *Dewsnup* "rationale applies to attempts to strip down any lien in a proceeding under any chapter of the Bankruptcy Code, including Chapter 13." *Hernandez*, 162 B.R. at 164. Again, this Court disagrees.

Some background concerning the *Dewsnup* case is required. In *Dewsnup*, the debtor executed a deed of trust granting the creditor a lien on two pieces of real property. The debtor defaulted, and filed for bankruptcy before the creditor could foreclose on the collateral. The value of the land was established as $39,000, far less than the outstanding loan amount of approximately $120,000. Debtor moved to "avoid" the undersecured portion of creditor's lien under Bankruptcy Code section 506(d), which provides, in part:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void....

11 U.S.C. § 506(d). Debtor argued that the term "allowed secured claim" must have the same meaning in section 506(d) as it does in section 506(a).

The Court rejected the debtor's arguments, holding that "allowed secured claim" for purposes of section 506(d) did not have the same meaning as the same term in section 506(a). *Dewsnup*, 502 U.S. at ——, 112 S.Ct. at 778. For purposes of section 506(d), the term "allowed secured claim" means a claim which is both allowed and secured, even though it may be secured for a lesser amount than the entire claim. For the purpose of section 506(a), "allowed secured claim" refers to the amount of an allowed claim which is secured. Therefore, the *Dewsnup* Court holds that "§ 506(d) does not allow the petitioner to 'strip down' respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502." *Dewsnup*, at ——, 112 S.Ct. at 778.

The linchpin of the *Dewsnup* Court's reasoning is the pre-Code practice of allowing liens to pass through bankruptcy proceedings unaffected. *Dewsnup*, at ——, 112 S.Ct. at 778. Under this practice, the personal liability of the debtor would be extinguished, but

the creditor's bargained for *in rem* remedy would survive the bankruptcy proceeding. *Id.* Because of the vagueness of the underlying Code sections 11 U.S.C. §§ 506(a) and (d), and because Congress did not indicate in the legislative history that a change in pre-Code practice was intended by those sections, the Court held that the pre-Code practice was still the law. *Id.* at ——, 112 S.Ct. at 779.

VCI argues that the Bankruptcy Court properly held that the *Dewsnup* decision extends to Chapter 13 debtors. The Bankruptcy Court stated:

> *Dewsnup* expressly held that a debtor is not allowed to use § 506(d) to strip down the undersecured portion of a lien. The opinion reasoned that, in the absence of clear legislative history or expressed change in statutory wording, a debtor cannot, through application of § 506(d), alter those lien rights that the parties bargained for pre-bankruptcy when entering into the lien or mortgage. *Dewsnup,* at —— ——, 112 S.Ct. at 778–79. The Court made clear its holding was narrow. *Id.* at —— n. 3, 112 S.Ct. at 778 n. 3. However, its rationale applies to attempts to strip down any lien in a proceeding under any chapter of the Bankruptcy Code, including Chapter 13.

*Hernandez,* 162 B.R. at 164. The rationale of the *Dewsnup* Court, however, does not, on its face, apply to Chapter 13. The Court provided this important caveat to its explanation of pre-Code practice. "*Apart from reorganization proceedings,* no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment of the debt." *Dewsnup,* 502 U.S. at ——, 112 S.Ct. at 779 (emphasis added) (citation omitted). This caveat, combined with the Court's statement that it was deciding only the specific facts before it, 502 U.S. at ——, 112 S.Ct. at 778, suggests that *Dewsnup* may not apply to a reorganization under Chapter 13.

In the pre-Code counterpart to Chapter 13, debtors could not affect the rights of secured claim holders. 11 U.S.C. §§ 1052 (1976), *see also* Keith M. Lundin, Chapter 13 Bankruptcy § 6.14, pp. 45–47 (2d ed. 1994).

Confirmation of a Chapter XIII plan in the pre-Code regime was impossible without the consent of every secured creditor dealt with by the plan, essentially prohibiting strip downs. *See* 11 U.S.C. § 1052 (1976). This pre-Code practice was changed by the Bankruptcy Reform Act of 1978, which established Chapter 13. *See* Lundin, Chapter 13 Bankruptcy at § 6.14, pp. 46–47. Bankruptcy Code section 1327 provides:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whither or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
>
> (b) Except as otherwise provided in the plan or order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
>
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327. This section allows Chapter 13 debtors to create a plan, binding on all creditors regardless of consent, that delivers the property of the estate to the debtor free and clear of creditor's claims and interests. A lien is a claim. *Johnson v. Home State Bank,* 501 U.S. 78, 82, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). Therefore, the language of section 1327 allows Chapter 13 debtors to provide in their plans that property may vest in the Debtor free and clear of creditor's liens. This section provides the type of evidence of Congress's intent to change the pre-Code practice that the Supreme Court found wanting in *Dewsnup.*

Other sections in Chapter 13 provide additional evidence of Congress's desire to allow Chapter 13 debtors to alter the status of creditor's liens. Section 1322 provides that a Chapter 13 plan may:

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ...

11 U.S.C. § 1322(b)(2). Creditor's "rights" are those created and defined by state law. *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993). One of the rights held by creditors in Illinois is the right to repossess property subject to a valid lien. 810 ILCS 5/9–503 (Smith–Hurd 1993). Therefore, Chapter 13 provides for the modification of a creditor's ability to enforce its lien. The Bankruptcy Court inexplicably excludes the creditor's right of enforcement from those rights which may be modified under Section 1322.

The purpose of Chapter 13 also militates against extending *Dewsnup.* One of the purposes of Chapter 13 is to encourage consumer debtors to gradually use their earnings to repay their obligations without resorting to a Chapter 7 liquidation, possibly to the benefit of their creditors. *See In re Schaitz,* 913 F.2d 452, 454 (7th Cir.1990); *In re Lee,* 162 B.R. 217, 224 (D.Minn.1993). The goal of providing debtors with a fresh start is also furthered by allowing debtors to own property free and clear of creditor's liens after designing and completing a plan of reorganization. Allowing the modification of creditor's liens furthers both of these purposes. One court has gone so far as to state:

> [To apply *Dewsnup* to reorganization cases] would, in essence, gut the sum and substance of the reorganization and rehabilitation of debt concept under the Bankruptcy Code.

*In re Butler,* 139 B.R. 258, 259 (Bankr. E.D.Okla.1992). This Court agrees that the rehabilitative purposes of Chapter 13 resist the extension of *Dewsnup* to that Chapter.

Other courts which have considered the question of whether *Dewsnup* should apply to Chapter 13 have held that it should not. *See Sapos v. Provident Institution of Savings,* 967 F.2d 918, 924–25 (3d Cir.1992); *In re Bellamy,* 962 F.2d 176, 182–83 (2d Cir. 1992);[2] *In re Cooke,* 169 B.R. 662, 666

(Bankr.W.D.Mo.1994); *McDonough v. Plaistow Cooperative Bank (In re McDonough),* 166 B.R. 9, 13 (Bankr.D.Mass.1994); *Gibbons v. Opechee Distributors (In re Gibbons),* 164 B.R. 717, 718 (Bankr.D.N.H.1993) (allowing bifurcation of secured creditor's claim in Chapter 13 proceeding); *Ford Motor Credit Co. v. Lee (In re Lee),* 162 B.R. 217, 224 (D.Minn.1993) (*"Dewsnup* and *Nobelman* do not limit the general availability of lien-stripping in Chapter 13 cases."); *Ford Motor Credit Co. v. Pickett (In re Pickett),* 151 B.R. 471 (Bankr.M.D.Tenn.1992) (holding that a lien preserved in Chapter 13 plan was extinguished by the payment of the secured portion of the claim); *In re McDade,* 148 B.R. 42, 44 (Bankr.S.D.Ill.1992) (holding *Dewsnup* not applicable to Chapter 13); *In re Murry–Hudson,* 147 B.R. 960, 962 (Bankr.N.D.Cal. 1992) (allowing strip down in Chapter 13); *Union Mortgage Co. v. Avret (In re Avret),* 146 B.R. 47, 49–50 (Bankr.S.D.Ga.1992) (holding "secured claim" has the identical meaning in Section 1322(b)(2) as in Section 506(a); *Dewsnup* is not applicable to Chapter 13 proceedings); *In re Butler,* 139 B.R. 258, 259 (Bankr.E.D.Okla.1992) (holding *Dewsnup* inapplicable to Chapter 13); *see also In re Burba,* 42 F.3d 1388 (table) (6th Cir.1994) (noting that the majority of courts decline to extend *Dewsnup* to Chapter 13). *But see Gammon v. Chrysler Credit Corp. (In re Gammon),* 155 B.R. 15, 17 (W.D.Okla.1993) (citing *Dewsnup* to support the position that a lien passes through Chapter 13 to a Chapter 7 liquidation despite full payment of the secured portion of the creditor's claim).[3]

Given the language of sections 1322 and 1327, the purpose of Chapter 13 of the Bankruptcy Code, and the persuasive analysis of many other courts that have considered this issue, the Court holds that *Dewsnup* is not applicable to the Chapter 13 proceeding at issue in this case. As a result, this Court also holds that the meaning of "allowed se-

---

**2.** This Court does not rely on any of the reasoning in *Bellamy* which was rejected, by implication, in *Nobelman v. American Savings Bank,* —— U.S. ——, ——, 113 S.Ct. 2106, 2109 n. 2, 124 L.Ed.2d 228 (1993).

**3.** A majority of courts to consider the issue of whether *Dewsnup* extends to proceedings in Chapter 11 have also held that it does not. *Wade*

*v. Bradford,* 39 F.3d 1126 (10th Cir.1994). *See also Dever v. IRS (In re Dever),* 164 B.R. 132, 133 (Bankr.C.D.Cal.1994); *In re Jones,* 152 B.R. 155, 163 (Bankr.E.D.Mich.1993) (also stating that the phrase "allowed secured claim" has the same meaning in section 1322(b)(2) as it does in 506(a), despite *Dewsnup*).

cured claim" in Section 1325 is the same as the meaning of that term in Section 506(a). Therefore, Section 1325 does not prohibit Debtor from stripping down VCI's lien on Debtor's automobile.

### C. *Nobleman v. American Savings Bank*

VCI also argues that the Bankruptcy Court's decision to prohibit the stripping of VCI's lien is supported by *Nobelman v. American Savings Bank,* — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In *Nobelman,* the Court held that a Chapter 13 debtor could not strip down a mortgagee's lien to the fair market value of the collateral. *Nobelman,* at ——, 113 S.Ct. at 2111. VCI argues that *Nobelman* stands for the proposition that the lien rights bargained for between the debtor and creditor are of "paramount importance," and that its rights as a lien holder must be protected. The Supreme Court, however, states that the source of protection of the creditors rights in *Nobelman* is section 1322(b). *Nobelman,* at ——, 113 S.Ct. at 2110. That section provides special protection to lenders who are secured solely by a security interest in real property that is the debtors principal residence. 11 U.S.C. § 1322(b). This special protection is available only to this type of lender and was provided in order to encourage the flow of capital into the home lending market. *Nobelman,* at ——, 113 S.Ct. at 2111–12 (Stevens, J., concurring). This protection of rights is not available to VCI, which holds a security interest in Debtor's automobile.

### D. Section 1327

As this Court has ruled that the Bankruptcy Court erred in extending *Dewsnup* to Chapter 13 proceedings and misinterpreted Section 1325, the Court will now consider Debtors argument that Section 1327 allows the reduction of VCI's lien to the fair market value of the collateral. The Bankruptcy Court granted Debtor's objection to VCI's claim by approving the bifurcation of the claim between secured and unsecured portions. The Bankruptcy Court went on to prohibit any strip down of the lien supporting the claim, stating, "VCI's lien remains on the automobile, and will fully survive completion

of the Chapter 13 Plan." *Hernandez,* 162 B.R. at 166.

The Bankruptcy Court's result runs afoul of the "free and clear" provision of Code section 1327. Bankruptcy Code section 1327, printed *supra,* provides the mechanism by which Chapter 13 Debtors can strip down creditor's liens without resorting to Code section 506(d). The Bankruptcy Court refused to consider Debtor's arguments based on this section because the Debtor's plan provides:

> With respect to each allowed secured claim provided by the Plan, the Petitioner proposes:
>
> .      .      .      .      .
>
> B.   The holder of such claim shall retain the lien securing such claim and the value, as of the effective date of the Plan, of property to be distributed under the Plan on account of such claim is not less than the allowed amount of such claim. . . .

*Hernandez,* 162 B.R. at 167. As the Bankruptcy Court points out, this language tracks 11 U.S.C. § 1325. *Id.* The Bankruptcy Court suggests that if Debtor's plan had provided that secured creditor's liens would be extinguished upon completion of the plan, it would consider the Debtor's arguments under Code section 1325, but is precluded from doing so because Debtor's plan allegedly provides for the retention of secured creditor's liens until both the secured and unsecured portions of the claims are repaid.

### E. The Language of the Plan

█  This Court has already held that the Bankruptcy Court's interpretation of Section 1325 is incorrect. The phrase "retain the lien" in section 1325 has been generally interpreted to mean that the creditor would retain the lien while amounts remained due on the secured portion of a creditor's claim or until the plan was completed, but no further. A split of authority does exist regarding whether a creditor's lien is extinguished as soon as the debtor pays the secured portion or whether the lien is extinguished only upon successful completion of the Chapter 13 plan. *See In re Burba,* 42 F.3d 1388 (table) (6th Cir.1994) (citing cases; holding that a lien is

extinguished only upon completion of the plan). *See also In re Cooke*, 169 B.R. 662, 666–68 (Bankr.W.D.Mo.1994) (holding that debtors satisfied lien by paying secured portion, plus interest); *In re Gibbons*, 164 B.R. 207 (Bankr.D.N.H.1993) (lien is voided only after debtor fully completed plan); *In re Peterson*, 163 B.R. 581, 583–84 (Bankr.D.Idaho 1993) (holding lien extinguished upon payment of secured portion of creditor's claim); *In re Lee*, 162 B.R. 217, 225 (D.Minn.1993) (holding that collateral may vest in debtors upon full payment of secured portion of creditor's claims); *Ford Motor Credit Co. v. Pickett (In re Pickett)*, 151 B.R. 471 (Bankr. M.D.Tenn.1992) (lien extinguished upon payment of secured claim); *In re Murry–Hudson*, 147 B.R. 960, 962 (Bankr.N.D.Cal.1992) (holding that a Chapter 13 debtor is permitted to hold personal property free and clear of liens after paying allowed secured claims); *In re Bunn*, 128 B.R. 281 (Bankr.D.Idaho 1991); *In re Tluscik*, 122 B.R. 728 (Bankr. W.D.Mo.1991); *In re Hargis*, 103 B.R. 912 (Bankr.E.D.Tenn.1989); *In re Tunget*, 96 B.R. 89 (Bankr.W.D.Ky.1988).[4] Only two cases have held that a debtor does not extinguish a lien by paying the allowed secured claim and completing the Chapter 13 plan. *In re Jordan*, 164 B.R. 89, 91 (E.D.Mo.1994) (holding that, under Section 1328, a conversion from Chapter 13 to Chapter 7 relates the Chapter 7 filing date back to the date of Chapter 13 filing, rendering *Dewsnup* controlling of the strip down question); *Gammon v. Chrysler Credit Corp. (In re Gammon)*, 155 B.R. 15 (W.D.Okla.1993) (holding that debtor, after conversion from Chapter 13 to Chapter 7, may not redeem personal property by paying amount owed on the secured claim). Given that the majority of courts have interpreted the phrase "retain the lien" in section 1325 to mean retention only until the secured portion has been paid, or possibly until the Chapter 13 plan has been completed, the Bankruptcy Court erred in forcing the minority interpretation on the

Debtor here, particularly where no Seventh Circuit caselaw is determinative and it is plain that the Debtor relied on the statutory language to draft her plan.

VCI, the creditor, claims that it did not object to Debtor's plan because it was satisfied with the manner in which its claim was treated. This "satisfaction" is dependent upon an interpretation of the Debtor's use of "retain the lien securing such claim" to mean that the lien will remain attached to the automobile until the entire debt, secured and unsecured, is paid. The Court has held that "retain the lien securing such claim" as used in Section 1325 is best interpreted to mean that "such claim" refers to the allowed secured claim as defined in Section 506(a). The Court also holds that this is the best interpretation of the identical language in Debtor's plan.

Similarly, the Court holds that the construction of Section 1325 adopted *supra* is equally applicable to the Section 1325 language in Debtor's plan. Therefore, debtor's plan does provide for the strip down of VCI's lien.[5] This strip down is not prohibited by *Dewsnup* or Chapter 13.

However, as VCI should have an opportunity to object to the plan in light of the meaning given to it in this opinion and because the Bankruptcy Judge should have the opportunity to reconsider the confirmation of the plan in light of the effect on secured creditors, the case must be remanded to the Bankruptcy Court. *See Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991) (setting forth a summary of the Code provisions designed to protect Chapter 13 creditors).

III. CONCLUSION

For the reasons explained in this opinion, the decision of the Bankruptcy Court is re-

---

**4.** Debtor argues that the lien is extinguished upon full payment of the secured portion. However, that question is not properly before this Court at this time.

**5.** Of course, Debtor would have been much wiser to make her intention more clear. For example, in *In re Lee*, 162 B.R. 217 (D.Minn.1993), the

Chapter 13 debtors provided in their plan, "Upon completion of payment of the secured portion of any claim, the property securing such claim shall vest in the debtor free and clear of any lien, claim or interest of the secured creditor." *Id.* at 218.

versed and remanded for further action consistent with this opinion.