In re Walter L. **CLAAR** and Patricia L. Claar, Debtors.

**Frank M. Pees, Plaintiff,**

v.

**DAN Joint Venture II, Defendant.**

**Bankruptcy No. 05–77597.
Adversary No. 06–2322.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

April 30, 2007.

Robert D. Bergman, Columbus, OH, for Plaintiff.

Waymon B. McLeskey, Columbus, OH, for Defendant.

Frank M. Pees, Chapter 13 Trustee, Worthington, OH.

### *MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT*

JOHN E. HOFFMAN, Bankruptcy Judge.

Frank M. Pees, the standing Chapter 13 Trustee and the plaintiff in this adversary proceeding ("Pees" or "Plaintiff"), has filed a complaint that seeks to strip off what he alleges is a wholly unsecured second mortgage on residential real estate owned by the Chapter 13 debtors, Walter L. Claar and Patricia L. Claar ("Debtors"). The real estate is located at 179 South Terrace Avenue, Columbus, Ohio ("Property"). The second mortgage on the Property is held by the defendant, DAN Joint Venture II ("Defendant" or "DAN"). Plaintiff seeks to strip off DAN's second mortgage pursuant to § 506(a) and (d) of the Bankruptcy Code.[1] The following are before the Court: (1) Plaintiff's motion for summary judgment ("Motion") (Adv.Pro.Doc.13); (2) DAN's memorandum contra ("Response") (Adv.Pro.Doc.15); and (3) Plaintiff's reply ("Reply") (Adv.Pro.Doc.16).[2]

---

1. Because the Debtors filed their bankruptcy case on October 16, 2005 ("Petition Date")—one day before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") (generally effective October 17, 2005)—all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version. (11 U.S.C. §§ 101–1330 (2000)). *See* Bankruptcy Abuse Preven-tion and Consumer Protection Act of 2005, Pub.L. No. 109–8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of BAPCPA).

2. Briefing on the Motion was completed on December 14, 2006.

The Motion is supported by the affidavit of Larry Frazier ("Frazier"), who appraised the Property and filed his appraisal in the Debtors' Chapter 13 case ("Frazier Appraisal"). The Frazier Appraisal fixes the value of the Property at $48,000 as of October 7, 2006 (nine days before the Debtors filed their Chapter 13 petition), which is considerably less than the outstanding indebtedness secured by the first mortgage on the Property. DAN does not dispute that as of the Petition Date the balance due on Debtors' first mortgage—$62,342.12—exceeded the value of the Property. Rather, DAN argues that the Debtors failed to maintain the Property as they were obligated to do under the mortgage loan documents and their neglect resulted in the low valuation set forth in the Frazier Appraisal.

Because DAN does not contest that the value of the Property is less than the amount that the Debtors owe on their first mortgage, the Court concludes that there exist no genuine issues of material fact that preclude the entry of summary judgment. And because Sixth Circuit case law establishes that wholly unsecured junior mortgage liens may be stripped off, the Plaintiff is entitled to judgment as a matter of law.

## I. Jurisdiction

The Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2)(K).

## II. Factual and Procedural Background

Based on its review of the pleadings and the affidavits filed by the parties, the Court finds that the following facts are not in dispute.

## A. The Second Mortgage

On or about July 30, 2002, the Debtors executed and delivered to Oakmont Mortgage Company a promissory note in the principal amount of $20,000 ("Promissory Note"). The Debtors' repayment obligation under the Promissory Note is secured by a second mortgage ("Second Mortgage") on the Property. The Promissory Note and Second Mortgage were subsequently sold and assigned to Countrywide Home Loans and then again to Radian Services, LLC. On or about May 9, 2005, the Promissory Note and Second Mortgage were again sold and assigned to DAN. According to the affidavit of Mike Kermec ("Kermec Affidavit")—an account officer with DAN—the loan extended to the Debtors by Oakmont that is secured by the Second Mortgage was based on the Property having an appraised value of $84,000. *See* Response, Kermec Affidavit.[3] This appraisal was conducted on or about May 1, 2002. *See* Response, Kermec Affidavit, Exhibit B.

## B. The Chapter 13 Case

On the "Schedule A—Real Property" accompanying Debtors' bankruptcy petition, they set forth their fee-simple interest in the Property, listed the Property's current market value as $55,000, and also listed claims secured by the Property totaling $81,723. The Debtors claimed a $10,000 exemption in the Property on their "Schedule C—Property Claimed as Exempt." On their "Schedule D—Creditors Holding Secured Claims," the Debtors listed Chase Home Finance ("Chase") as the holder of a first mortgage ("First Mortgage") on the Property, with a secured claim of $62,342. The Debtors listed DAN as the holder of the Second Mortgage with a claim amount of $19,381.

---

**3.** The Kermec Affidavit attached to the Response is neither signed nor notarized.

On the Petition Date, the Debtors filed their proposed Chapter 13 plan (Bankr. Doc.4). DAN filed an objection to confirmation of the plan (Bankr.Doc.14), arguing that the plan violated 11 U.S.C. § 1322(b)(2). The plan was subsequently amended on January 17, 2006 ("Amended Plan") (Bankr.Doc.17). DAN withdrew its objection on January 27, 2006 (Bankr. Doc.18), and the Amended Plan was confirmed by order of the Court entered on March 8, 2006 (Bankr.Doc.21). In the section of the Amended Plan entitled "Special Provisions," the Debtors proposed to treat DAN as an unsecured creditor pending the filing and disposition of an adversary proceeding that would seek to strip off the Second Mortgage.

On November 9, 2005, the Debtors filed the Frazier Appraisal (Bankr.Doc.7), which describes both the interior and exterior condition of the Property as "poor." Frazier Appraisal at 1. The Frazier Appraisal states that the interior of the Property "needs [a] new [k]itch[en] floor and numerous [m]isc[ellaneous] repairs, plus painting," and the exterior "needs [a] new roof." *Id.* Frazier estimated that the Debtors would be required to spend $10,000 to put the Property "in good condition for sale." *Id.*

Pees commenced this adversary proceeding on April 19, 2006. In his complaint, Pees asserts that there is no equity in the Property to secure the Second Mortgage given the Property's appraised value and the amount due and owing on the First Mortgage. Thus, Pees argues, DAN is not entitled to a secured claim under 11 U.S.C. § 506, its Second Mortgage should be released and discharged, and the Debtors' obligation to DAN should be deemed to be an unsecured debt. In its answer, DAN claims, among other things, that the Debtors were negligent in maintaining the Property and that this negligence resulted in the low valuation for the

Property set forth in the Frazier Appraisal. DAN further argues that the Debtors should not be entitled to benefit from their negligence in failing to maintain the Property. DAN requests that the Court deem its claim to be fully secured.

### III. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056). On motion for summary judgment, the inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anthony v. BTR Auto. Sealing Sys., Inc.,* 339 F.3d 506, 511 (6th Cir.2003); *McKenzie v. Bell-South Telecomms., Inc.,* 219 F.3d 508, 512 (6th Cir.2000). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party satisfies its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Lanier v. Bryant,* 332 F.3d 999, 1003 (6th Cir.2003); *McKenzie,* 219 F.3d at 512. The non-moving party may not meet this burden by resting on mere allegations in the pleadings. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Mounts v. Grand Trunk W.R.R.,* 198 F.3d 578, 580 (6th Cir.2000). "Merely alleging the existence of a factual dispute is insuffi-

cient to defeat a summary judgment motion; rather, there must exist in the record a genuine issue of material fact." *McKenzie,* 219 F.3d at 512 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A material fact is one that has the "potential to affect the outcome of the suit under applicable law." *FDIC v. Anchor Props.,* 13 F.3d 27, 30 (1st Cir.1994) (citation omitted). "[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

## IV. Legal Analysis

■ Pees asserts that DAN does not have a secured claim because there is no equity in the Property to which DAN's lien may attach. Accordingly, Pees contends that he is entitled to strip off the Second Mortgage pursuant to § 506(a) and (d) of the Bankruptcy Code. Section 506(a) states that

> "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim."

11 U.S.C. § 506(a). A lien against property is void "[t]o the extent [such] lien secures a claim against the debtor that is not an allowed secured claim...." 11 U.S.C.

§ 506(d). "Where a creditor holds a second mortgage on a homestead valued at less than the debtor's secured obligation to a first mortgagee, ... the holder of the second mortgage has only an 'unsecured claim' for § 506(a) purposes." *Lane v. W. Interstate Bancorp (In re Lane),* 280 F.3d 663, 664 (6th Cir.2002). And "[i]f a claimant's lien on the debtor's homestead has no value at all ... the claimant holds an 'unsecured claim' and the claimant's contractual rights are subject to modification" under § 1322(b)(2) of the Bankruptcy Code.[4] *Id.* at 669. Five other courts of appeals and two bankruptcy appellate panels have joined the Sixth Circuit in holding that a wholly unsecured junior mortgage on the debtor's principal residence is not protected from modification by § 1322(b)(2). *See Zimmer v. PSB Lending Corp. (In re Zimmer),* 313 F.3d 1220 (9th Cir.2002); *Pond v. Farm Specialist Realty (In re Pond),* 252 F.3d 122 (2d Cir.2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner),* 217 F.3d 1357 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee),* 212 F.3d 277 (5th Cir.2000); *McDonald v. Master Fin., Inc. (In re McDonald),* 205 F.3d 606 (3d Cir.2000); *Domestic Bank v. Mann (In re Mann),* 249 B.R. 831 (1st Cir. BAP 2000); *Lam v. Investors Thrift (In re Lam),* 211 B.R. 36 (9th Cir. BAP 1997). *But see Am. Gen. Fin., Inc. v. Dickerson (In re Dickerson),* 222 F.3d 924, 926 (11th Cir.2000) (following *Tanner* because panel was bound by it but stating: "[W]ere we to decide this issue on a clean slate, we would not so hold. We find persuasive the district court's reasoning that providing 'anti-modification' protection to junior mortgagees where the value of the mortgaged property exceeds the senior mortgagee's

---

**4.** Section 1322(b)(2) provides, in relevant part:

> [T]he plan may—
>
> . . . .

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence....

11 U.S.C. § 1322(b)(2).

claim by at least one cent, as prescribed by the Supreme Court's decision in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), but denying that same protection to junior mortgagees who lack that penny of equity, places too much weight upon the valuation process.").

To avoid DAN's Second Mortgage, then, the Plaintiff must establish that the Property is valued at less than the First Mortgage obligation to Chase.[5] If, after taking the First Mortgage into account, there is no equity in the Property to secure the Second Mortgage, then DAN's claim is unsecured and its "rights are subject to modification by the plan[ ]" under § 1322(b)(2) of the Bankruptcy Code.

## A. Application of § 506(a)

The Plaintiff submitted Frazier's affidavit and the Frazier Appraisal in support of the Motion. As stated above, Frazier's affidavit states that the value of the Property was $48,000 as of the Petition Date.[6] DAN did not file an appraisal or an opposing affidavit to establish that the value of the Property as of the Petition Date was higher than $48,000. In the Response, DAN refers to two alternative appraisals of the Property—the first, done in 2002 when the Debtors obtained the loan secured by the Second Mortgage, valuing the Property at $84,000,[7] and the second, done on January 21, 2006, valuing the Property at $61,000 as of that date.[8] But DAN does not argue that these other appraisals create a genuine issue of material fact as to the value of the Property on the Petition Date. Nor does it argue—based on these appraisals—that the value of the Property on the Petition Date exceeded the outstanding indebtedness secured by the First Mortgage. Rather, DAN relies on

---

5. Chase did not file a proof of claim in the Debtors' case. Under the terms of the confirmed Amended Plan, the Debtors are paying the First Mortgage held by Chase outside the plan.

6. In this adversary proceeding, the parties agree that in determining whether DAN's Second Mortgage is wholly unsecured, the appropriate valuation point is the Petition Date. *See* Motion at 1; DAN Preliminary Pretrial Statement (Adv.Pro.Doc.8) at 3. "Courts have not reached a consensus on the proper valuation date of property when a debtor attempts to strip off a wholly unsecured lien." *Dean v. LaPlaya Invs., Inc. (In re Dean),* 319 B.R. 474, 477 (Bankr.E.D.Va.2004). *Compare Crain v. PSB Lending Corp. (In re Crain),* 243 B.R. 75, 82 (Bankr.C.D.Cal.1999) (holding that the "the proper valuation date is the 'effective date of the plan[,]' " which is generally 10 days after the entry of the order confirming the plan) *with Dean,* 319 B.R. at 478 (the line of cases that has "settled on the bankruptcy petition date as the proper date to value a debtor's property in the context of lien stripping … is most persuasive"); *W. Interstate Bancorp v. Edwards (In re Edwards),* 245 B.R. 917, 919 (Bankr.S.D.Ga.2000) (holding that, in determining whether junior mortgage holder's lien was subject to strip-off, "the value of the [r]esidence is determined as of the commencement of the bankruptcy case"); *In re Sanders,* 202 B.R. 986, 987 (Bankr.D.Neb. 1996) (relying on the value of the debtors' property at the petition date in determining that the creditor is wholly unsecured). *See also Aubain v. LaSalle Nat'l Bank (In re Aubain),* 296 B.R. 624, 636 (Bankr.E.D.N.Y. 2003) (rejecting the holding of *Crain* and adopting—for purposes of selection of valuation date in case where debtor sought to strip-off wholly unsecured junior mortgage—the flexible, 11–factor, totality-of-the-circumstances test articulated by the court in *Wood v. LA Bank (In re Wood),* 190 B.R. 788, 794–96 (Bankr.M.D.Pa.1996)). Here, it is unnecessary for the Court to address this issue since the parties agree that the Property should be valued as of the Petition Date.

7. DAN attached an unauthenticated copy of this appraisal to its Response.

8. DAN did not attach a copy of the January 21, 2006 appraisal to its Response. A copy of this appraisal was appended to the pretrial statement filed by DAN on July 12, 2006 (Adv. Pro.Doc.8).

these other appraisals to support its contention that the low valuation contained in the Frazier Appraisal is attributable to the Debtors' failure to maintain the Property. Even if a properly authenticated copy of the January 21, 2006 appraisal had been submitted by DAN, the $61,000 valuation contained in that appraisal is less than the balance due and owing to Chase on the First Mortgage on the Petition Date.

Plaintiff attached to his Reply a Supplemental Affidavit of Debtor Walter Claar ("Claar Affidavit"). According to the Claar Affidavit, the balance due and owing to Chase for the First Mortgage was $62,342.12 as of the Petition Date.[9] *See* Reply, Claar Affidavit ¶ 4. Based on the Appraisal, the secured claim of Chase exceeds the value of the Property by $14,342.12. Even if the Court were to accept the $61,000 valuation set forth in the January 21, 2006 appraisal, Chase's secured claim would still exceed the value of the Property by $1,342.12. Thus, there is no dispute between the parties that the First Mortgage indebtedness exceeded the value of the Property as of the Petition Date, and there is no value remaining to secure DAN's claim. The claim is com-

pletely "under water" and hence wholly unsecured. *See Lane*, 280 F.3d at 664 ("If the lien were only partially under water (*i.e.*, if the second mortgagee's claim had a secured component, being unsecured only in part), the Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), teaches that the rights of the lienholder would not be subject to modification.").

## B. Application of § 506(d)

DAN asserts that Plaintiff may not use § 506(d) as a basis to strip off a wholly unsecured mortgage lien and, thus, Plaintiff's reliance on this statutory provision as the predicate for lien avoidance is misplaced. Relying on the Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), DAN argues that a Chapter 7 debtor cannot use § 506(d) to void the portion of an undersecured creditor's lien that is unsupported by value in its collateral.[10] According to DAN, it would not be logically consistent to allow debtors in reorganization cases to use § 506(d) as a basis for lien avoidance when a Chapter 7 debtor may

---

9. In its Response, DAN contends that "[t]he amount due on the [F]irst [M]ortgage has never been verified. Although Walter L. Claar recites the supposed balance in his affidavit, he does not state the basis for that balance and no documentation in support thereof is attached to the affidavit.... The Plaintiff should be required to confirm the balance of the [F]irst [M]ortgage. This has never been done in the bankruptcy case or adversary [proceeding]." Response at 3. However, in the Claar Affidavit attached to the Reply, Debtor Walter Claar states: "At the time of filing our Chapter 13 bankruptcy, the balance of the [F]irst [M]ortgage to Chase was $62,342.12, which is based on a statement received from Chase and which I believed to be accurate." Reply, Claar Affidavit ¶ 4. Attached to the Claar Affidavit is a credit report for the Debtors, which reflects that as of December 8, 2006—nearly two months after the

Petition Date—the balance due and owing to Chase on the First Mortgage loan was $61,093. *Id.* at ¶ 6. Mr. Claar's supporting affidavit satisfies the evidentiary standard imposed by Fed.R.Civ.P. 56(e). The Claar Affidavit was "made on personal knowledge," *see* Fed.R.Civ.P. 56(e), and the basis of Mr. Claar's personal knowledge as to the outstanding balance due on the First Mortgage on the Petition Date—his review of the "statement received from Chase," *see* Claar Affidavit ¶ 4—is set forth in the affidavit.

10. In *Dewsnup*, the Supreme Court held that a Chapter 7 debtor may not use § 506(d) to "strip down" the lien held by an undersecured mortgagee—i.e., the undersecured mortgage holder's lien could not be limited to the portion of its debt that actually was secured by value in the property.

not do so. *See* Response at 3–4. While DAN's argument may have merit, it is largely academic. Even if the Court were to conclude—based on *Dewsnup*—that a Chapter 13 debtor cannot use § 506(d) to avoid and strip off wholly unsecured junior mortgage liens, as explained below, the same result can be achieved through the plan confirmation process and the combined operation of §§ 506(a), 1322(b)(2), 1325(a)(5),[11] and 1327(b) and (c).[12]

■ Courts are divided over the question of whether a debtor in a reorganization case may use § 506(d) as a basis for stripping down, or stripping off, a lien. *Compare In re Sadala,* 294 B.R. 180, 182–83 (Bankr.M.D.Fla.2003) (holding that Chapter 13 debtor may utilize § 506(d) to strip off wholly unsecured second mortgage); *Waters v. The Money Store (In re Waters),* 276 B.R. 879, 888 (Bankr.N.D.Ill. 2002) ("[T]he claim of the junior mortgage lienholder is wholly unsecured, and the lien should be stripped off the Property and avoided under § 506(d) if the [Chapter 13] Debtor performs under the confirmed plan and makes all required payments.") *with In re Hill,* 304 B.R. 800 (Bankr. S.D.Ohio 2003) "Contrary to the premise of the [Chapter 13] Debtors' Motion, § 506(d) cannot be used to avoid a [wholly unsecured junior mortgage] lien on the sole basis that the creditor does not possess a secured claim under 11 U.S.C. § 506(a).... Although *Dewsnup* was a Chapter 7 case, 'there is no principled way to conclude that, although section 506(d) does not authorize lien stripping in chapter 7 cases, it has a different meaning in chapter 11, 12 and 13 matters.' " (quoting 4 *Collier on Bankruptcy* ¶ 506.06[1][c] (15th ed. rev.2003)). *See generally* David Gray Carlson, *Cars and Homes in Chapter 13 After the 2005 Amendments to the Bankruptcy Code,* 14 Am. Bankr.Inst. L.Rev. 301, 387 (2006) ("The proposition that section 506(d) takes on its pre-*Dewsnup* meaning in cases outside chapter 7 is certainly open to criticism."). But the Court need not choose a side in this debate to dispose of this adversary proceeding. Because, as a leading treatise explains,

> *Dewsnup* focused on the voiding of liens under § 506(d) in Chapter 7 cases. Chapter 13 accomplishes its limiting effect on liens by valuation under § 506(a), modification under § 1322(b)(2), lien retention under § 1325(a)(5) and vesting free and clear under § 1327(b) and (c). Chapter 13 debtors need not void the unsecured portion of an undersecured claim holder's lien[,] [or a wholly unsecured junior mortgage lien] under § 506(d); rather, a debtor retires the lienholder's entitlement to the present value of its allowed secured claim by

---

11. Section 1325(a)(5) provides, in pertinent part, as follows:

> [T]he court shall confirm a plan if—
> ....
> (5) with respect to each allowed secured claim provided for by the plan—
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

> (C) the debtor surrenders the property securing such claim to such holder[.]
> 11 U.S.C. § 1325(a)(5).

12. Section 1327(b) and (c) provide:

> (b) Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.
> 11 U.S.C. § 1327(b) and (c).

payments through the plan, and the property vesting in the debtor at confirmation is only subject to a lien to that extent.

Keith M. Lundin, *Chapter 13 Bankruptcy, 3d. Edition* § 231.1 at 231–36 (2000 & Supp.2004). *See also Hill,* 304 B.R. at 803–04 (holding that Chapter 13 debtors need not file adversary proceeding to strip off wholly unsecured junior mortgage lien on debtors' principal residence, but rather may do so through the plan confirmation process and, specifically, through the combined operation of §§ 506(a), 1322(b)(2), 1325(a)(5) and 1327(c) of the Bankruptcy Code); *In re Hernandez,* 175 B.R. 962, 967 (N.D.Ill.1994) ("Bankruptcy Code section 1327 . . . provides the mechanism by which Chapter 13 Debtors can strip down creditor's liens without resorting to § 506(d).").

Thus, while Plaintiff's complaint seeks relief under § 506(d), the confirmation of the Debtors' Amended Plan, which provided lien retention rights to holders of secured claims and vesting of property free and clear pursuant to § 1327, effects the same result—the strip off and elimination of DAN's wholly unsecured junior mortgage. *See Sears, Sucsy & Co. v. Ins. Co. of N. Am.,* 396 F.Supp. 820 (N.D.Ill.1975) (in granting summary judgment, court deemed pleadings amended to conform to submitted material where no prejudice results). Here, no prejudice will result from allowing the pleadings to conform to the evidence in the summary judgment record because DAN was placed on notice from the inception of this adversary proceeding that Pees sought to strip off its junior mortgage on the ground that it is wholly unsecured. Whether strip-off is effected under § 506(d), or through the confirmation process—and the combined operative effect of §§ 506(a) (valuation), 1322(b)(2) (modification), 1325(a)(5) (lien retention)

and 1327(b) and (c) (vesting free and clear)—the ultimate result is the same. And the predicate required to obtain the relief requested also is the same—a factual showing that the Second Mortgage was wholly unsecured on the Petition Date. As discussed above, DAN has not challenged the factual basis for the relief requested—it did not argue, or submit an opposing affidavit or other evidence to establish, that the value of the Property exceeded the outstanding balance on the First Mortgage as of the Petition Date. Thus, DAN had the opportunity to challenge Pees's factual assertion that its Second Mortgage is completely "under water," but opted not to do so. That the legal consequence of DAN's status as a wholly unsecured mortgage holder—the strip-off and elimination of its Second Mortgage—is effected by the plan confirmation process (and the operative effect of §§ 506(a), 1322(b), 1325(a) and 1327(b) and (c)), rather than by operation of § 506(d), is of no moment.

## C. Depreciation of the Property Due to the Debtors' Alleged Neglect

■ DAN also opposes summary judgment on the ground that it "believes that the debtors neglected and/or committed waste causing this depreciation in the value which is greatly to D.A.N.'s detriment." Response at 3. This argument is unavailing. DAN fails to offer any legal support for its theory that the Debtors' alleged failure to maintain the Property in good repair precludes the application and operation of § 506(a). DAN may have a claim against the Debtors for damages (which it has not asserted in the proof of claim filed in the Debtors' Chapter 13 case) if it can establish that they committed waste or violated the mortgage covenant requiring them to keep the Property in good repair.[13] But DAN offers no authority to

13. Paragraph 6 of the mortgage signed by the Debtors (which is attached to the Kermec

Affidavit) provides, in pertinent part: "Borrower shall keep the Property in good repair

bolster its assertion that where a debtor/mortgagor fails to properly maintain the mortgage holder's collateral, § 506(a)'s mechanism for determining the existence and/or amount of the mortgage holder's secured claim should not be applied. The relief requested by Pees—avoidance of the Second Mortgage—turns on whether DAN's claim is wholly or partially secured. To make this determination the Court looks to § 506(a) and the unrebutted evidence in the summary judgment record establishing that as of the Petition Date the value of the Property was less than the balance due and owing to Chase on the First Mortgage. The unsupported assertion that the Debtors may have committed waste or violated their contractual obligation to maintain the Property simply does not impact the Court's determination of the amount of DAN's secured claim or alter the conclusion that its wholly unsecured Second Mortgage may be stripped off.

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion is **GRANTED.** A judgment in accordance with this memorandum opinion shall be entered separately.

**IT IS SO ORDERED.**

and shall not commit waste or permit impairment or deterioration of the Property...."